**James D. MILLER, Jr., Appellant,**

v.

**Mernsey MONREAN et al., Appellees.**

**No. 1490.**

Supreme Court of Alaska.

March 16, 1973.

William H. Timme, Alaska Legal Services Corp., Ketchikan, for appellant.

Edward G. King, of Ziegler, Ziegler & Cloudy, Ketchikan, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, and BOOCHEVER, JJ.

### OPINION

RABINOWITZ, Chief Justice.

This appeal raises two first impression questions regarding Alaska's income exemption statute AS 09.35.080(1).

Pursuant to a valid judgment, appellees Mernsey and Mable Monrean obtained a writ of execution and on November 17, 1970, Miller received a check for $325.56 ing account. At the time of this levy, Miller's checking account had a balance of $260.68, all of which was seized. During the times pertinent to this litigation, Miller was employed by the State of Alaska's Marine Highway system as a seaman on the ferry MATANUSKA. Miller was paid twice each month; each paycheck represented net wages for work performed during a two-week period ending 15 days before the date of payment. On October 30, 1970, Miller received a check for $325.56 for work performed between October 1 and October 15. On November 13, 1970, he received a check for $423.21, earned during the period of October 15 through October 31. On November 30, 1970, he received $320.14 for work performed between November 1 and November 15, 1970.

On November 13, 1970, Miller's wife deposited his paycheck in the amount of $423.21 in their joint checking account at the First National Bank of Ketchikan. Between November 13, 1970 and the date of the levy of execution, the Millers used a portion of these funds for paying bills incurred for living expenses, leaving a balance on November 17, 1970, of $260.68. Thereafter, Miller filed a Notice and Claim of Exemption on December 1, 1970, and an Affidavit Claiming Exemptions under AS 09.35.080(1). Miller asserted that he was entitled to an exemption of $350 from the $423.21 deposited. Since only $73.21 would thus be subject to the levy, he asked that the balance of the $260.68 seized from the bank account, being the sum of $187.47, be returned to him.

Following a hearing, the district court found that the relevant income for purposes of determining the allowable exemption under AS 09.35.080(1) was $744.21. While incorrectly computed, this figure apparently represents the total of the November 13 check for $423.21 and the $320.14 in income which had accrued to Miller but had not been paid to him for the period from November 1 through November 15. Subtracting the $350 exemption from $744.21, the court found that $394.21 was subject to execution on November 17, 1970, and denied the claim for exemption. This denial was upheld on appeal to the superior court and this appeal followed.

Turning to the first issue in this appeal, the parties' agreed statement of the case states that the district judge held that "the income deposited in [appellant's] checking account was not exempt from execution." In his specifications of error, Miller claims that the superior court initially erred in affirming the district court's denial of the Claim of Exemption "in that funds exempt by AS 09.35.080(1) do not lose their exempt status upon being deposited in a judgment debtor's checking account."

AS 09.35.080(1), the statute in question, provides that:

The following property is exempt from execution, except as otherwise specifically provided when selected and reserved by the judgment debtor or his agent at the time of the levy, or as soon after levy and before sale as the existence of the levy becomes known to him:

(1) the income of the judgment debtor, regardless of when it became payable, for work performed during the preceding 30 days, or otherwise earned or inured to his benefit within the 30-day period; the 30-day period shall be reckoned back from the date of the levy, but the exemption may not exceed $350 if he is the head of a family, and the amount of $200 if he is not the head of a family; the amount of the exemption shall be computed after deductions and payments, required by law or court order, so as to assure the judgment debtor the receipt of the first $350 per month if he is the head of a family or $200 if he is not the head of a family, when it appears by the debtor's affidavit or otherwise that the income is necessary for his use or for the use of his family which is supported in whole or in part by his income . . .

Appellees argue that AS 09.35.080(1), like 46 U.S.C. section 601[1] and 15 U.S.C. Sections 1671–1677, contains no language that would permit application of the exemption to income after the debtor has received and deposited it in a checking account. As to 46 U.S.C. Section 601, appellant Miller counters that this federal statute is different from AS 09.35.080(1) in that the federal seaman's exemption was designed to protect the seaman's wages only until such time as he arrives at his home port.[2] Miller further argues that 15 U.S.C. Sections 1671–1677 were enacted by Congress to protect the debtor from the particularly onerous burdens on the debtor resulting from the garnishment of wages still held by his employer. In this regard, 15 U.S.C. Section 1673 provides that a creditor may garnish no more than 25 percent of an individual's disposable earnings[3] for any work week, or the amount by which his disposable earnings for that week exceed 30 times the federal minimum hourly wage, whichever is less. "Garnishment" is defined in 15 U.S.C. Section 1672(c) as "any legal or equitable procedure through which the earnings *of any individual are required to be withheld for payment* of any debt." (Emphasis supplied.) Section 1674, 15 U.S.C., prohibits an employer from discharging any employee because his earnings have been subjected to garnishment for any one indebtedness.[4] Thus, Congress' purpose was

1. 46 U.S.C. § 601 states in part:

No wages due or accruing to any master, seaman, or apprentice shall be subject to attachment or arrestment from any court, and every payment of wages to a master, seaman, or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages or of any attachment, encumbrance, or arrestment thereon; and no assignment or sale of wages or of salvage made prior to the accruing thereof shall bind the party making the same, except such allotments as are authorized by this title.

Both parties agree that this statutory exemption applies only to seaman's wages that are still "due or accruing," and once received by the seaman may be subject to levy of attachment or execution. *See* Erenerol v. McCarthy, 20 A.D.2d 798, 248 N.Y.S.2d 464 (1964).

2. In McCarty v. Steam-Propeller City of New Bedford, 4 F. 818, 833–834 (S.D. N.Y.1880), the court stated:

[T]he rule exempting wages from garnishment springs out of the sharp necessity which the nature of his calling casts upon the seaman when he leaves his ship. A seaman is compelled to be improvident. While at sea the ship is his house, and his daily bread he must receive from the hands of the ship's master. His wages cannot be paid him day by day, but must be allowed to accumulate in the hands of an unknown owner. When the voyage is over he must at once provide himself with temporary shelter and with food, and for that purpose he must have money in his hand. Therefore it is that his wages are nailed to the ship, and therefore it is that, as in the ancient days of the Consolato, so now, the law is forced to declare that no man can be permitted to . . . deprive the seaman of the right to demand his wages when he leaves the ship.

Similarly, the court in X–L Fin. Co. v. Bonvillion, 232 So.2d 922, 923–924 (La.Ct.App.1970), stated:

The special exemption to seamen was necessary inasmuch as long voyages were then the rule and considerable wages would be accumulated all of which could be attached or garnished under the laws of some states thus rendering a seaman absolutely destitute upon termination of his voyage.

3. 15 U.S.C.A. § 1672(b) defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld."

4. It should be noted that because 15 U.S.C. §§ 1671–77 does apply only to garnishments against the debtor's employer, its provisions are not applicable to the present appeal. 15 U.S.C. §§ 1677 states in part:

This subchapter does not annul, alter, or affect, or exempt any person from complying with, the laws of any State (1) prohibiting garnishments or providing for more limited garnishments than are allowed under this subchapter
. . . .

Thus, to the extent that Alaska's income exemption statute has a broader applica-

not so much to protect the earnings of the debtor for his and his family's maintenance and support as to make wage garnishment proceedings a less attractive means for a creditor to satisfy his claims.[5]

AS 09.35.080(1), on the other hand, specifically states that a $350 exemption shall be granted to the head of a family "when it appears by the debtor's affidavit or otherwise that the income is necessary for his use or for the use of his family which is supported in whole or in part by his income." Thus, AS 09.35.080(1) reflects a broader purpose than the federal statutes discussed above. And we think it reasonable to assume that the Alaska legislature, in effecting that purpose, intended to protect the debtor's income after it is received by him. We therefore hold that the income exemption provided for by AS 09.35.080(1) applies to income after the debtor has received it.

Several courts have similarly construed wage or income exemption statutes as extending the scope of their protection beyond the payment of wages to the debtor.[6] Staton v. Vernon, 209 Iowa 1123, 229 N. W. 763 (1930), is nearly identical to the case at bar. The applicable statute provided:

> The earnings of a debtor, who is a resident of the state and the head of a family, for his personal services, or those of his family, at any time within ninety

days next preceding the levy, are exempt from liability for debt. Iowa Code § 11763.

The judgment debtor had deposited his earnings in a bank account. The creditor claimed that the funds lost their exempt status upon deposit in the bank. The court held that earnings retain their exempt status after they had been paid to the debtor and are still in his possession in their original form at the time of the levy. It further held that depositing the earnings in a bank "does not so change the character of the earnings as to deprive them of their exempt character." 229 N.W. at 764.

In Rutter v. Shumway, 16 Colo. 95, 26 P. 321 (1891), the creditor argued that the applicable statute provided protection of the earnings of the judgment debtor only so long as they remain in the hands of the employer.[7] The court, in *Rutter*, stated that the construction of the statute urged by the creditor

> would not only deprive [the debtor] of the privilege of depositing his earnings with any bank or other depositary [sic] for safe-keeping, but would subject his wages to supplemental proceedings even in his own pocket; for, if earnings once received immediately lose their character as wages, then it is evident that the laborer could never retain his earnings for a single hour without exposing them to the very perils which the statute was de-

---

tion as to income after the debtor has received it, it would not be affected by the federal statutes.

5. Congress set forth its findings in 15 U.S.C. § 1671 in part as follows:
   (a) The Congress finds:
   (1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.
   (2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consump-

tion constitutes a substantial burden on interstate commerce.

6. *See generally* Annot., 67 A.L.R. 1203 (1930) for a compilation of the wage exemption cases as well as cases involving exemption of insurance proceeds, pension funds, and workmen's compensation awards.

7. 26 P. at 322. The statute provided in part:
   There shall be exempt from levy under execution or attachment or garnishment the wages and earnings of any debtor to an amount not exceeding one hundred dollars, earned during the thirty days next preceding such levy under execution or attachment or garnishment of the same . . . . . *Id.* at 321.

signed to avert. Such a construction would practically frustrate the beneficent objects of the statute. 26 P. at 322.

One additional aspect of appellees' argument on this point should be discussed. The Monreans argue that there is nothing in the text of AS 09.35.080(1) which permits extension of the income exemption to income after it is received. They argue that AS 09.35.080(1) in fact specifically dictates that income loses its exempt status after receipt by the debtor, pointing to the following statutory language: ". . . so as to assure the judgment debtor the receipt of the first $350 per month if he is the head of a family . . . ." Under this construction the income exemption provided by AS 09.35.080(1) would be limited to garnishments against the debtor's employer. We think the language relied upon by appellees does not require this construction. Considering the statute as a whole, with a view to its underlying purpose,[8] we believe it reasonable to construe the phrase "to assure . . . receipt" in this context to mean "to assure . . . use" by the judgment debtor. The primary purpose of AS 09.35.080(1) is to allow the judgment debtor to retain a portion of his income to meet his family needs. In light of this purpose, it would be anomalous to limit the protection of AS 09.35.080(1) to income in the hands of the employer.

8. *See* 2 J. Sutherland, Statutory Construction §§ 4703, 4704 (3d ed. 1943).

9. *See* Karlen, Exemptions From Execution, Bus.Lawyer 1167, 1169 (1967); Note, Debtor Exemptions in New Mexico, 6 Nat.Res.J. 467 (1966); Note, The Iowa Personal Earnings Exemption, 2 Drake L.Rev. 45 (1953).

10. SLA 1969, ch. 96, § 1. Alaska's initial income exemption statute provided in part that:

The following property shall be exempt from execution if selected and reserved by the judgment debtor or his agent at the time of the levy, or as soon thereafter before sale thereof as the same shall be known to him, and not otherwise:

First. The earnings of the judgment debtor for his personal services ren-

This brings us to the difficult question of whether the district court erred by including in its exemption calculation the income that had accrued to Miller as of the time of the levy, November 17, but had not as yet been received by him. Or to state the question somewhat differently, does AS 09.35.080(1) require that the $350 exemption be deducted from all income of the debtor earned within the relevant 30-day period, whether or not received by him prior to the levy?

Income exemption statutes are said to serve three basic purposes: namely, to encourage debtor rehabilitation, to preserve part of the debtor's earnings for the benefit of his family, and to prevent the debtor and his family from becoming public charges by permitting execution on all of the debtor's income.[9] In discussing the first issue in this appeal, we alluded to the fact that the purpose of AS 09.35.080(1) is to promote these basic interests by exempting $350 of income earned by the debtor within the 30 days preceding the levy, regardless of when the income becomes payable. Based upon our analysis of the purposes, language and legislative history of AS 09.35.080(1), we conclude that the lower courts in the case at bar erroneously calculated the statutory income exemption.

The legislature, in 1969, repealed and re-enacted AS 09.35.080(1).[10] While the

dered at any time within sixty days next preceding the levy of execution or attachment, when it appears by the debtor's affidavit or otherwise that such earnings are necessary for the use of his family supported in whole or in part by his labor. Carter Code, Code of Civ.Procedure § 273 (1900). This statute was modeled upon Oregon law. No significant change, in regard to the issues in this appeal, was made in this statutory forerunner of AS 09.35.080 (1) until 1953. In that year, the legislature added a proviso which, after setting forth the 30-day period and a $200 exemption, provided

*that any money received on account on earnings during the thirty-day period* hereinabove mentioned and prior to the

authors of the 1969 legislation attempted to clarify ambiguities in the statute,[11] they refrained from making major substantive changes. Of significance to the resolution of issues in this appeal is the fact that the 1969 legislation added the following language for the first time to Alaska's income exemption statute:

[T]he amount of the exemption shall be computed after deductions and payments, required by law or court order, *so as to assure the judgment debtor the receipt of the first $350 per month* if he is the head of a family or $200 if he is not the head of a family . . .. (Emphasis supplied.) [12]

Any ambiguity in the language of this section is clarified by the report of the House Judiciary Committee pertaining to the 1969 amendment setting forth the present provisions.[13] That report stated in its relevant part:

Second, the present language specifies that the total amount of the exemption shall apply to income 'which is due him or received by him from any source at any time within thirty days immediately preceeding the levy.' While it is clear that the statute is intended to insure receipt by the judgment debtor of the appropriate exemption amount each month, this language does not specify whether the excess over the exemption which may be attached is to be computed with respect to amounts actually paid during the past thirty days, and appears to authorize both accrued income and paid income to be added together to determine the excess liable to attachment. The proposed amendment would gear the thirty day period contained in the exemption statute to an accrual basis, and would subject only those funds actually earned or otherwise accrued during the previous thirty day period to execution, regardless of when those funds are payable.

levy of execution or attachment, shall be charged against the exemption herein mentioned, and the amount of the exemption shall be reduced accordingly; it being the intention of the Act to provide an exemption to the wage earner of not to exceed Two Hundred Dollars in every thirty-day period prior to the levy of attachment or execution. SLA 1953, ch. 74, § 1 (Emphasis supplied.)

This proviso exempted 30-day earnings after they were received by the judgment debtor. After the first $200 of such earnings were received, the remainder was subject to execution.

In the case at bar, appellant Miller received $423.21 "on account on earnings during the thirty day period" preceding the November 17 levy. Thus, under the 1953 version of what is now AS 09.35.080(1), at least $200 of Miller's $423.21 received income would have been exempt from execution. Study of the legislative development of AS 09.35.080 (1) subsequent to 1953 reveals that none of its amendments altered the first income received policy expressed in the 1953 proviso.

In 1966, the legislature amended AS 09.35.080(1) to clarify that the statute exempts income received and accrued, up to $350 for the head of a family. SLA 1966, ch. 31, § 1. While the 1966 amendment deleted the 1953 proviso, the legislative history of the amendment implicitly recognized the continuing vitality of the first income received policy. The Report of the House Judiciary Committee, 1966 Alaska House Journal 591, states:

The result is that any income . . . which has been received by the person or which is due to the person in the 30 day period preceding the levy is all considered and *when the person has received the exempt amount, the rest is subject to execution.* (Emphasis supplied.)

11. *See* Report of the House Judiciary Committee. 1969 Alaska House Journal 718-19.

12. SLA 1969, ch. 96, § 1.

13. Reports of legislative committees may be regarded as an exposition of the legislative intent where otherwise the meaning of a statute is obscure. Wright v. Vinton Mountain Trust Bank, 300 U.S. 440, 463 n. 8, 57 S.Ct. 556, 81 L.Ed. 736, 744 n. 8 (1937); Duplex Printing Press Co. v. Deering, 254 U.S. 443, 474-475, 41 S.Ct. 172, 65 L.Ed. 349, 360 (1921); *see generally* 70 A.L.R. 5, 39 (1931).

The only funds in Miller's account on November 17, the date of levy, were the balance of the November 13 pay check originally in the amount of $423.21 which covered earnings for the period October 15 through October 31. Miller was entitled to the first $350 of that sum so that $73.21 is the amount over and above the allowable exemption which could be reached by levy. When that sum is deducted from the $260.-68 remaining in the bank account on November 17, $187.47 was not subject to levy and should be returned to Miller.

Had Miller not been a seaman, Monrean could have levied against his employer, who would have been required to deliver such unpaid funds earned to the date of levy as are garnishable under other federal statutes. Of the sum so accrued during a 30-day period, AS 09.35.080(1) would entitle the employee to an exemption of the first $350 that he received. Due to the peculiar circumstances of this case whereby the federal seaman's statutory prohibition against levies on wages is applicable, the remaining amount actually earned and accrued by Miller cannot be levied upon while held by his employer.

The judgment of the superior court is reversed with directions to remand the matter to the district court with directions to vacate the judgment previously entered and to enter a judgment in conformity with this opinion.[14]

FITZGERALD, J., not participating.

14. Miller does not contend in his briefs that the AS 09.35.080(1) income exemption should be calculated by excluding that portion of the 30-day income received by him and spent for family needs prior to his receiving notice of the levy. In the parties' agreed statement of facts, it is stated that the $423.21 income check was deposited in Miller's checking account, and that approximately $164 of this amount was used to pay living expenses prior to the November 17 levy. In claiming an exemption, Miller asked that the district court return $187.47 of the $260.68 balance which was in his checking account at the time of the levy. Miller specifically agreed that there was "no controversy" as to the validity of the attachment of $73.21 of the $260.68 balance.

In light of this record, we need not decide whether the statutory exemption should be calculated by excluding that portion of the 30-day income received by the debtor and spent for family needs prior to the levy. See, Medical Fin. Ass'n. v. Rambo, 33 Cal.App.Supp. 2d 756, 86 P.2d 159 (1938); Power v. Loonam, 49 Misc.2d 127, 266 N.Y.S.2d 865 (1966); Oil Well Supply Co. v. Galbreath, 175 Okl. 305, 52 P.2d 780 (1935); Crites v. Bede, 86 Or. 460, 168 P. 941 (1917).

Our analysis of AS 09.35.080(1) has revealed several ambiguities, some of which have been brought to the surface in this appeal. We also note potential conflict between AS 09,35.080(1) and 15 U.S.C. § 1673, with respect to garnishment of income in the employer's hands. See Hodgson v. Cleveland Municipal Court, 326 F.Supp. 419 (N.D.Ohio 1971). We therefore urge the legislature to look into the federal law and statutory ambiguities with an eye to revising AS 09.35.080(1). For helpful ideas in this regard, see Joslin, Debtors' Exemption Laws: Time For Modernization, 34 Ind.L.J. 355 (1959).