John T. DUNLOP [successor to Peter J. Brennan], Secretary of Labor, United States Department of Labor, Plaintiff,

v.

FIRST NATIONAL BANK OF ARIZONA, a national banking association, Defendant.

No. Civ. 72–118 Phx.  WPC.

United States District Court, D. Arizona.

Sept. 8, 1975.

Norman S. Nayfach, Altero D'Agostini, Regional Sol., U. S. Dept. of Labor, San Francisco, Cal., for plaintiff.

Robert E. B. Allen and James J. Schmid, of Streich, Lang, Weeks, Cardon & French, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

The First National Bank of Arizona (hereinafter the Bank) has been served with writs of garnishment[1] which attach funds held for the depositors named in the writs.  The Department of Labor (hereinafter the Department) asserts that portions of such deposits may be subject to the provisions of 15 U.S.C. § 1671 et seq.[2] [Consumer Credit Protection Act, Subchapter II].  The Department further maintains that the Bank has an affirmative duty to identify such funds as are exempted under the act and to assert that defense on behalf of its depositors in the Bank's response to these writs.

The Bank has filed a motion for summary judgment pursuant to Rule 56 and the Department has filed a cross-motion for summary judgment.  Although a number of issues are raised by the parties in their lengthy pleadings, the basic questions are two in number.

1.  See A.R.S. §§ 12–1573, 1574(A), 1578(A), 1584, 1585, 1586, 1589 and 1592.

2.  Pub.L. 90–321, Title III, § 301 et seq., May 29, 1968, 82 Stat. 163.

1. Does 15 U.S.C. § 1671 et seq. apply to funds deposited in a bank account?

2. If 15 U.S.C. § 1671 et seq. does apply to bank deposits, does the bank have the duty to assert the exemption on behalf of the depositor or does that duty rest solely with him?

### The Statutory Scheme

Before addressing the questions set forth above, a review of the statutory scheme is necessary in order to answer them in the proper perspective. 15 U. S.C. §§ 1671–1677 constitutes Subchapter II of the Consumer Credit Protection Act. The act was formulated by Congress as an attempt to cure a wide range of abuses which had surfaced over the years in the growing field of consumer credit. Subchapter I [15 U.S.C. §§ 1601–1665] is a detailed framework addressed to the problems of consumer credit cost disclosures and it specifically brings financial institutions within its ambit.[3] Subchapter III [15 U.S.C. § 1681 et seq.] concerns itself with the abusive practices of consumer reporting agencies. It also by reference binds financial institutions to its regulations.[4] Subchapter II, on the other hand, makes no reference to financial institutions in any of its sections.[5]

### I

### The Application of Subchaper II to Banks

#### A.

#### Congressional Intent

After a careful reading of the Congressional reports and debate [6] on the subchapter and the briefs submitted by the Bank and the Department one fact emerges. There is *no* mention of financial institutions in reference to Subchapter II. This is all the more revealing in light of the fact that the House Subcommittee which held the hearings on and reported out this subchapter was a subcommittee of the *House Banking and Currency Committee.* Absent a clearly defined (in this case a nonexistent) legislative history the Court will look to the statute itself for the proper construction of the subchapter. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136.

A reading of any given section of a statute should be done in reference to the context of the entire act. *See Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492. Subchapters I and III are specifically addressed to problem areas within which financial institutions have a role to play. The purpose of Subchapter II is to govern the relationship between employers and employees. It is aimed at the evils that befall that relationship when wages are garnished. There is not the slightest hint in the wording of 15 U.S.C. §§ 1671–1677 that the subchapter should be applied to financial institutions.

Where Congress has specifically used a term [in this case "financial institutions"] in certain places within the statute [Subchapters I and III] and excluded it in another [Subchapter II] the court should not read that term into the excluded section.[7] *Cf. Federal Trade Commission v. Simplicity Pattern Co., Inc.,* 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.

---

3. *See* 15 U.S.C. §§ 1601, 1607.

4. *See* 15 U.S.C. §§ 1681a(d), 1681s(b).

5. *See* 15 U.S.C. §§ 1671, 1674, 1676 (These sections parallel those found in nn. 3 & 4, *supra,* yet there is not even the hint of the statute's application to financial institutions under Subchapter II.)

6. *See* 114 Cong.Rec. 1833 and 2 U.S.Code Cong. & Admin.News 1968 at p. 1962.

7. The administrative red tape involved in a number of the Department's proposals as to how the Bank could comply with the subchapter is staggering. As the record indicates even those proposals offer no guarantee of a workable solution. The very complexity of the Department's proposals suggest that a Congressional committee charged with the oversight of this nation's financial institutions would have at least given pass-

2d 1079; rehearing denied 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93.

## B.
### Case Law and Administrative Rulings

This is a case of first impression. Neither the Bank nor the Department has cited to the court any decision of the federal courts that is controlling in this matter.[8] The Department with some zeal urges upon the court the opinion of the Supreme Court in *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608. This Court is of the opinion that the case is not instructive as to the issues discussed herein. That case involved an interpretation of 42 U.S.C. § 407[9] [the Social Security Act]. The court held that disability benefits deposited in a bank were exempt from attachment by the Welfare Board of Essex County, New Jersey. Although the statute used the same "pay or payable" language set forth in 15 U. S.C. § 1672(a) the cases are quite dissimilar. The Court feels that *Philpott, supra,* is distinguishable. § 407, *supra,* expresses a concern on the part of the Congress to protect a given fund from *all* methods of attachment. On the other hand Subchapter II is regulatory in nature. The statute is concerned with the regulation of the garnishment process itself and not the protection of a given fund. This conclusion is supported by the general regulatory nature of all three subchapters of the act. If Congress in the drafting of such a regulatory statute had intended that it apply to such a large grouping of economic institutions it would have so stated as it did in Subchapters I and III of the same act.[10]

■ The Department attempts to support its argument by citing this Court to its Opinion Letters of October 26, 1970 [CCH Lab.L.Rep. ¶ 20,772] and August 3, 1972 [CCH Lab.L.Rep. ¶ 30,805] which held that Subchapter II applied to funds deposited in a bank or other financial institution. While in certain circumstances great weight should be given to such administrative opinions, the ultimate interpretation of the statute rests with this Court. *See Federal Trade Commission v. Texa-Co, Inc.,* 393 U.S. 223, 89 S.Ct. 429, 21 L.Ed.2d 394.

In this case the Department's Opinion Letters, *supra,* are not supported by any independent basis save the opinion of the Department. Those opinions are not supported by any reasoning within them that would lead this Court to a different statutory interpretation than the one adopted herein. To uphold the Department's interpretation of Subchapter II would require this Court to read into the act language and intent that are not present therein. This the Court is unwilling to do.

---

ing mention to them in Subchapter II if their intention had been to so apply that section.

8. The only court that appears to have been faced with this issue was the Alaskan Supreme Court. In *Miller v. Monrean,* 507 P. 2d 771 (Alaska, 1973), the court in passing noted that its reading of the subchapter led it to the conclusion that the act did not apply to funds in financial institutions. *See Miller, supra,* at 773 n. 4.

9. § 407. Assignment
"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

10. The Department has urged the argument that Congress should not have been expected to enumerate all the different types of institutions within which an individual might deposit his paycheck. The problem of course is that Subchapter II does not even mention the general term financial institutions. Congress did, however, in Subchapter I [15 U. S.C. §§ 1601, 1607] mention financial institutions and go into great detail as to what agency should regulate them. If Congress had intended for Subchapter II to be so applied at least the general term financial institutions would have been employed.

## II

### Claiming the Exemption Under the Act

Even if this Court had reached the conclusion that exempted funds under Subchapter II retained their exempt status within a bank account, the Bank would still be entitled to summary judgment. If such an exemption existed nothing within Subchapter II places the duty of asserting that defense upon the Bank.

The Department has not cited to this Court a single case interpreting an exemption created by an act of Congress that requires the Bank to assert a statutory right of this nature in behalf of its depositiors.[11]

A careful reading of Subchapter II provides no support for the Department's position. The only sections of the subchapter which place restrictions upon the actions of a person or institution do not apply to banks as such. 15 U.S.C. § 1673(c) requires that "no court of the United States or any State" shall violate the provisions of the act by permitting writs of garnishment to issue against exempted funds. 15 U.S.C. § 1674, the only other section placing a duty upon an individual or institution, forbids the discharge of an employee solely on the basis that his wages have been garnished. There is no language in the subchapter that even hints at such a duty.[12] This Court is unwilling to read such a meaning into the subchapter.

### Conclusion

In summary, the Department has failed to convince the Court that Subchapter II should be read as extending the exemption granted thereunder to funds deposited in a financial institution. Furthermore, if the act did extend such an exemption to these funds, the Bank is under no obligation to assert that exemption on behalf of the depositor.

It is therefore ordered that plaintiff's motion for summary judgment is denied.

It is further ordered that defendant's motion for summary judgment is granted.

---

11. Both the Bank and the Department cite the court to state cases interpreting state garnishment laws. None of those cases, most of which appear to be pre-1910, appear to be instructive as to the issue presented herein.

12. Here again the very nature of the Department's proposed application of the act mitigates against the argument that Congress intended for the act to apply to financial institutions. The burden placed upon the Bank in asserting the exemption is a heavy one. The complexity of determining for the debtor what funds are exempt and which are not, and then asserting that defense against the state courts' writs of garnishment would involve the Bank in a Pandora's Box of possible litigation by both parties.