EDWARDS v HENRY

Docket No. 78-4732. Submitted February 6, 1980, at Grand Rapids.—
    Decided April 23, 1980. Leave to appeal denied, 409 Mich 932.

Patricia Henry was evicted from the apartment she rented from
    Jerry Edwards. She owed $177.10 in back rent. Edwards
    brought an action in small claims court for rent and damages
    and received a default judgment of $193.30. Plaintiff garnished
    defendant's checking account and pursuant to his writ of
    garnishment the bank removed $103.96 from defendant's check-
    ing account to an escrow account and eventually delivered this
    amount to the district court. Defendant's income was derived
    from ADC benefits and wages of $72 per week from her part
    time job. Defendant's motion for post-judgment relief was
    granted. The district court determined that defendant's ADC
    benefits were exempt from garnishment despite being comin-
    gled with wages in the checking account. The court ordered
    $43.96 of the garnished account returned to defendant and the
    remaining $60 paid to plaintiff in partial satisfaction of the
    judgment. The district court rejected defendant's claim that the
    Consumer Credit Protection Act (CCPA) exempted from gar-
    nishment that portion of her account monies attributable to
    wages. Defendant appealed. The orders of the district court
    were affirmed, Kent Circuit Court, Stuart Hoffius, J. Defendant
    appeals by leave granted. The question on appeal is whether
    the CCPA shelters defendant's funds in her checking account
    derived from wages from garnishment. Defendant contends
    that since recipients of government benefits are exempt, the
    CCPA should be interpreted so as to afford an equal degree of
    protection to funds earned in private employment. *Held:*

    Subchapter II of the CCPA does not shelter from garnish-
    ment that portion of a worker's checking account funds attrib-
    utable to her wages and falling within the statute's maximum.
    Affirmed.

REFERENCES FOR POINTS IN HEADNOTE
[1] 6 Am Jur 2d, Attachment and Garnishment § 176.
    Validity, construction, and application of §§ 301-307 of Consumer
        Credit Protection Act (15 USCS §§ 1671-1677) placing restrictions
        on garnishment of individual's earnings. 14 ALR Fed 447.

GARNISHMENT — CONSUMER CREDIT PROTECTION ACT — PRIVATE EMPLOYMENT WAGES — EXEMPTIONS — STATUTES.

The Consumer Credit Protection Act does not shelter from garnishment that portion of a worker's checking account funds attributable to her wages and falling within the statute's maximum. (15 USC 1671-1677).

*Legal Aid of Western Michigan* (by *Michael Nelson)*, for defendant.

Before: DANHOF, C.J., and R. B. BURNS and MAC-KENZIE, JJ.

PER CURIAM. The defendant was evicted from the apartment she rented from the plaintiff, leaving the rent in arrears in the amount of $177.10. The plaintiff brought an action in small claims court for the rent and other damages and received a default judgment of $193.30, including costs. The plaintiff immediately sought garnishment of the defendant's checking account in the Michigan National Bank. Pursuant to the writ of garnishment, the bank removed the $103.96 in the defendant's checking account to an escrow account, and eventually delivered that amount to the district court.

The defendant's income at the time was derived from ADC benefits and wages of $72 per week from her part time job. Acting upon the defendant's motion for post-judgment relief, the district court determined that the defendant's ADC benefits were exempt from garnishment despite their being comingled with wages in the checking account, citing *Pease v North American Finance Corp,* 69 Mich App 165; 244 NW2d 400 (1976). Applying a formula based on the relative amounts of the defendant's benefits and wages, the court ordered $43.96 of the garnished account returned to the defendant and the remaining $60 paid to the plaintiff in partial satisfaction of the judgment.

The remainder of the judgment was settled by a large voluntary payment from the defendant and a court ordered plan for discharging the balance in installments.

The district court rejected the defendant's claim that subchapter II of the Consumer Credit Protection Act (CCPA), 15 USC 1671-1677, exempted from garnishment that portion of her account monies attributable to her wages. On direct appeal to the circuit court, the orders of the district court were affirmed. She appeals by leave granted. The plaintiff has filed no responsive brief.

The CCPA provides, in pertinent part:

"(a) The Congress finds:

"(1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

"(2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

"(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country.

"(b) On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws." 15 USC 1671.

"For the purposes of the subchapter:

"(a) The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

"(b) The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

"(c) The term 'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 USC 1672.

"(a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

"(1) 25 per centum of his disposable earnings for that week, or

"(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)." 15 USC 1673.

The question on appeal is whether subchapter II of the CCPA shelters from garnishment that portion of a worker's checking account funds attributable to her wages and falling within the statute's maximum.

The defendant urges us to follow the lead of a Utah county court and answer the question in the affirmative. We find, however, that the reported cases available to us are much more persuasive and do not favor the defendant's position. Three of

these cases are particularly notable, each making a slightly different point against extension of the statute's reach to the "wages" filling an earner's account.

*John O Melby & Company Bank v Anderson,* 88 Wis 2d 254; 276 NW2d 274 (1979), examined the findings and statements of purpose set forth in 15 USC 1671 and concluded that the Congress had focused in subchapter II on abuse of the wage garnishment remedy by the consumer credit industry and the injuries that befall debtors whose employees are compelled to withhold wages. The *Anderson* court also commented that the statute's reference to the "workweek" and "pay period" as bases for computing the maximum allowable garnishment served to illustrate the congressional intent to affect only the passing of wages from employer to employee.

Our question was also answered in the negative by *Dunlop v First National Bank of Arizona,* 399 F Supp 855 (D Ariz, 1975). The district court in that case pointed out that the provisions considered here were only part of a larger single enactment, which in subchapters I and III, 15 USC 1601-1665 and 15 USC 1681-1681t, "specifically address[es] * * * problem areas within which financial institutions have a role to play". That court continued, "Where Congress has specifically used a term * * * in certain places within the statute * * * and excluded it in another * * * the court should not read that term into the excluded section". 399 F Supp at 856.

The *Dunlop* court pointed out that the "administrative red tape" involved in following portions of weekly paychecks into bank accounts would be "staggering". 399 F Supp at 856, fn 7. This concern was more directly before the court in *Usery v*

*First National Bank of Arizona,* 586 F2d 107 (CA 9, 1978), in which the Secretary of Labor, seeking to enforce subchapter II under the authority granted him by 15 USC 1676, sought to compel a bank to calculate the portion of wage earners' accounts attributable to protected wages before honoring garnishment orders. The court made virtually the same analysis of the CCPA that was set out in *Anderson* and *Dunlop.* In considering the only textual support claimed by the defendant here, the court said:

"The definition of earnings as compensation 'paid or payable' in section 302(a) is not inconsistent with this view, and is quite consistent with an interpretation that confines the duty to apply the exemption exclusively to the employer or those in the position of the employer. The term 'paid' as applied to the employer will cover those amounts which have been accrued on the employer's books, and thus are 'paid' in the accounting sense, even though such funds have not yet been transmitted to the employee. This construction is an adequate explanation for the use of the terms 'paid or payable.' Moreover, we find it unreasonable to use the single word 'paid' as the basis for the sweeping extension of the Act advocated by the Department." 586 F2d at 110.

To the secretary's claim that his interpretation of the statute that he was charged to enforce was entitled to deference, the *Usery* court responded, "[T]he agency's interpretation departs so widely from the statutory mandate that it is explicable more easily as an organic reflex to extend its own jurisdiction than as a reasoned interpretation of the statute". 586 F2d at 111.

The defendant points out that statutory restrictions on garnishment of money paid or payable as veterans' or social security benefits have been held to protect those funds on deposit, citing *Philpott v*

*Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), and *Porter v Aetna Casualty & Surety Co,* 370 US 159; 82 S Ct 1231; 8 L Ed 2d 407 (1962). It is her claim that the CCPA should be interpreted so as to afford an equal degree of protection to funds earned in private employment.

This argument was rejected in each of the three cases we have considered in this opinion. The *Usery* Court pointed out that the statute protecting veterans' benefits expressly provides shelter "either before or after receipt by the beneficiary". 38 USC 3101a. It went on to comment that 42 USC 407, at issue in *Philpott,* protects social security payments from "execution, levy, attachment, garnishment, or other legal process", while the CCPA refers only to garnishment of wages. 586 F2d at 111.

We believe that there exists a significant difference between the purposes underlying the protection of government benefits and that upon which the CCPA is based. Recipients of government benefits are by definition deemed to be entitled to them by need or merit. In a sense, the government has an interest in the money it distributes even after it has passed into the hands of the recipient. Veterans' benefits are also exempt from state and Federal taxation. In that connection, the Supreme Court of the United States has said:

"These payments are intended primarily for the maintenance and support of the veteran. To that end neither he nor his guardian is obliged to keep the moneys on his person or under his roof. As the immunity from taxation is continued after the payments are received, the usual methods of receipt must be deemed available so that the amounts paid by the Government may be properly safeguarded and used as the needs of

the veteran may require." *Lawrence v Shaw,* 300 US 245, 250; 57 S Ct 443; 81 L Ed 623 (1937).

In conclusion, we note that where there exists no split of authority in the Federal court concerning the interpretation of a Federal statute, state courts should be very cautious in differing with the prevailing view in that system, if they do not feel themselves precluded altogether from doing so. The CCPA has never, to our knowledge, been afforded by a Federal court the reach the defendant would ask to give it. For this reason and for the reasons set forth above, we affirm the lower court.

No costs, a public question.