548 So.2d 701 (1989)
Maurice A. FERRE and Mercedes M. Ferre, Appellants,
v.
CITY NATIONAL BANK OF MIAMI, Appellee.
No. 89-605.
District Court of Appeal of Florida, Third District.
July 25, 1989.
Rehearing Denied October 9, 1989.
*702 Paul, Landy, Beiley & Harper and Steven E. Eisenberg, Miami, for appellants.
Ruden, Barnett, McClosky, Smith, Schuster & Russell and John H. Pelzer, Fort Lauderdale, and Thomas K. Gallagher, for appellee.
Before BARKDULL, NESBITT and LEVY, JJ.
PER CURIAM.
The Ferres appeal a final order entered in proceedings supplemental to final judgment. Said final order reads in part as follows:
"THIS CAUSE having come before this court upon Plaintiff's Supplemental Proceedings Complaint for fraudulent conveyances and conspiracy, and the third-party Defendant, MERCEDES FERRE, having been properly impleaded in this cause and afforded her constitutional due process rights of notice and fair opportunity to prepare and defend her rights at a final hearing.

Findings of Fact
1. Plaintiff received a judgment against Defendant, MAURICE FERRE, on September 10, 1976 for $1,000,000 plus $12,500 in attorneys' fees. It is stipulated by the parties that at the time of trial on February 6, 1989 the Defendant, MAURICE FERRE, owed $1,627,019.90 on said judgment.
2. It is stipulated by the parties that Defendant, MAURICE FERRE, transferred to his wife, MERCEDES FERRE, $1,451,973.40 between February 1978 and January 1988 resulting from consultation fee checks MAURICE FERRE received and then endorsed over to his wife each and every month and deposited in MERCEDES FERRE's bank accounts.
3. That MAURICE FERRE was severely in debt in the approximate amount of $23,000,000 during the period of years when the transfers were made and stated he has never filed bankruptcy.
4. That MERCEDES FERRE states she was aware of her husband's indebtedness and insolvency during the period of years when the transfers were made.
5. That MERCEDES FERRE stated that at any time her husband needed money during the past ten years, she would either give her husband cash or write out a check for his needs.
6. That there was no adequate consideration regarding the transfers between MAURICE FERRE and MERCEDES FERRE.
7. That when MAURICE FERRE was first asked in his October, 1984 deposition why he transferred the consultation fee checks to his wife each month, MAURICE FERRE stated:
"Because your client at one time took all the money that I had in some checking accounts ... they went after all of my personal accounts, so there is no use in my having accounts because they'll do the same thing any time I have an account. At least that's what I thought."
8. That between MAURICE FERRE's own testimony and the overwhelming badges of indicia of fraudulent intent present, it is clear MAURICE FERRE's intent in making the transfers was to hinder, delay and defraud his creditors.
9. That the funds transferred were not exempt funds pursuant to the Federal Wage Exemption Act since said Statute does not protect wages once they leave the employer's possession. The funds transferred were not exempt by the Florida State Wage Exemption Statute and Defendants have not requested any relief pursuant to said statute because MAURICE FERRE was paid as an independent contractor, not as an employee and MERCEDES FERRE was the head of the household and paid all the household bills. Accordingly, the funds transferred were applicable to payment of the debt due.
10. Although the Defendants submitted various newspaper articles prior to 1984 which state that MAURICE FERRE was receiving a consultation fee, there was no *703 evidence presented that proves that the Plaintiff was made aware of the transfers between MAURICE FERRE and MERCEDES FERRE prior to the October 1984 deposition.
11. Although these proceedings were not filed until April 1988 and Plaintiff offers no reason for the delay, the court finds that the Defendants were not prejudiced by the delay. MAURICE FERRE and MERCEDES FERRE are still married and living in the same high standard of living in a "show case" house written up in the February, 1989 issue of Architectural Digest. The Defendants do not claim any prejudice in preparing their defense due to a witness's [sic] or party's death or their inability to testify. In addition, Defendants do not claim that any documents were lost or cannot be produced due to the time delay in bringing this action.
12. MAURICE FERRE stated that he personally was not prejudiced by the delay in any way. MAURICE FERRE further admitted that he did not rely on the bank's inaction in any way. MAURICE FERRE further stated that even after Plaintiff filed suit in 1988, he continued to transfer checks to his wife.
13. Although MERCEDES FERRE states she was prejudiced by the delay, in that if she knew it was improper to accept the checks she would not have accepted them, the court finds that such does not constitute prejudice to merely hold her liable for the monies she admits she never should have received to begin with.
14. MERCEDES FERRE further states she is prejudiced because if she knew she did not have use of the consultation fees, she would not have sent her adult children to as expensive colleges or otherwise lived as lavishly. The court finds said testimony of MERCEDES FERRE is totally speculative in nature, as to what MERCEDES FERRE would have done, and not subject to proof. Furthermore, the court finds that MERCEDES FERRE's testimony is not very credible in light of the amount of monies MERCEDES FERRE had from the sale of certain property in 1980 of over $4,000,000 ($3,500,000 after taxes) plus other monies she inherited in the 1960's of approximately $400,000.
15. Although MERCEDES FERRE states she spent all the monies transferred to her on the family's living expenses, MERCEDES FERRE stated she comingled the consultation fee checks into the same accounts with her inherited monies and she could not distinguish which funds were spent on living expenses and which funds were invested in properties and other assets she now owns or monies still in her accounts.

RULING
IT IS ORDERED AND ADJUDGED as follows:
Based on the above findings, the court rules in favor of the Plaintiff, CITY NATIONAL BANK, and finds that fraudulent conveyances did occur between MAURICE FERRE and MERCEDES FERRE between February 1978 and January 1988 for $1,451,973.40 and that Defendants' affirmative defense of laches is hereby denied. Accordingly and pursuant to the broad, liberal and equitable powers of a court under Supplemental Proceedings, Florida Statute Section 56.29, the court hereby enters a final judgment against MERCEDES FERRE in favor of the Plaintiff, CITY NATIONAL BANK, for $1,451,973.40 for which let execution issue forthwith. The court hereby reserves ruling to enter an award of attorney's fees and costs pursuant to Florida Statute Section 56.29(11)."
The appellants contend that this action was barred by the statute of limitations, or laches, that it was barred by the federal Consumer Credit Protection Act, 15 U.S.C. § 1675, and that there was no evidence to find fraud in the transfer by Mr. Ferre to Mrs. Ferre. We disagree and affirm the trial's action. The Supreme Court of Florida long ago indicated that an action to enforce a judgment involving fraudulent conveyances to a member of the judgment debtor's family, particularly when the judgment debtor continued to enjoy the benefits of the transferred asset, was viable for the life of the judgment. *704 See Robinson v. The Springfield Co., 21 Fla. 203 (1885) and Isaacs v. Mulray, 112 Fla. 197, 150 So. 232 (1933). The Ferres contend that under the federal Consumer Credit Protection Act the proceeds received by the judgment debtor and protected by the federal act would continue their immunity in the hands of third parties, which in effect would give 100% protection. We believe this is contrary to the very wording of the federal statute and contrary to the cases interpreting it. See Dunlop v. First National Bank of Arizona, 399 F. Supp. 855 (D.Ariz. 1975); compare Household Finance Corp. v. Kinder, 3 Ohio Misc.2d 3, 444 N.E.2d 99 (Ohio Mun.Ct. 1982). And lastly, there is ample evidence from Mr. Ferre himself that the purpose of the transfer to his wife was to avoid creditors.
Affirmed.