# 97 DTA 166

TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE BAYAMON
PANEL I

EX PARTE

YAZMIN NADAL ARROYO Y JORGE ARIAS GUARDIOLA
Peticionarios

Núm. KLCE-96-00956

San Juan, Puerto Rico, a 11 de agosto de 1997

Panel integrado por su Presidente, Juez Sánchez Martínez,
y los Jueces Broco Oliveras y Urgell Cuebas

Sánchez Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El peticionario Jorge Arias Guardiola nos solicita que dejemos sin efecto una orden de retención de ingresos para el pago de una pensión alimentaria a sus dos hijos menores, por dos razones: (1) porque la misma es nula por haberse dictado en violación al debido proceso de ley, al no habérsele notificado de la vista en que se fijó dicha orden de retención; y (2) porque la orden excede el límite de retención del cincuenta por ciento (50%) que establece el Consumer Credit Protection Act, 15 U.S.C. sec. 1671 *et. seq.*, y el Art. 24, inciso 6, de la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 523(6) (Supl. 1996). El Tribunal de Primera Instancia (Hon. José A. Parés Martínez, J.) emitió una resolución en la que denegó ambos planteamientos. El peticionario recurre ante nos en *certiorari*. Por las razones que exponemos a continuación, se expide el auto y se confirma la resolución recurrida.

## I

En el caso de autos, la madre de los dos hijos menores del peticionario Jorge Arias Guardiola presentó una moción al Tribunal de Primera Instancia en la que informaba el atraso del pago de la pensión alimentaria y solicitaba que se encontrara a éste incurso en desacato. El tribunal *a quo* llevó a cabo una vista de desacato el 1ro. de noviembre de 1995. En dicha vista estuvieron presentes la promovente y el hermano del peticionario, Lic. Amancio Arias Guardiola, en calidad de albacea de la Sucesión de su padre. El peticionario no estuvo presente.

En dicha vista, se determinó que la deuda en concepto de pensión alimentaria atrasada ascendía a $2,220. El Lic. Amancio Arias Guardiola informó que el peticionario era uno de los herederos de su padre; que el peticionario nunca había pagado pensión alimentaria desde que se había divorciado, en vista de que su padre era el que pagaba los gastos de los niños; que una vez falleció su padre, se hicieron unas gestiones en el tribunal para embargar $24,300 más intereses de los fondos pertenecientes al peticionario en el fideicomiso; ▉ que depositó en el tribunal dicha suma más los intereses ascendentes a $4,536.75, dinero que fue retirado; y que el peticionario recibe $1,113.41 mensuales de un fideicomiso que dejó en herencia su padre. El albacea solicitó que se expidiera una orden de retención al Banco Popular para que fuese dicho banco el que retuviera la pensión alimentaria. También, éste señaló que iba a satisfacer la deuda de $2,850 en concepto de pensión alimentaria atrasada.

El tribunal *a quo* emitió una orden de retención al Banco Popular para que del fideicomiso del peticionario se retuviera la pensión alimentaria de $630 mensuales y se acreditara a la Administración de Sustento de Menores. La orden era efectiva al 1ro. de enero de 1996. El albacea señaló que el peticionario vivía en una casa propiedad de la Sucesión y que la misma no tenía buzón donde recibir la correspondencia. En cuanto a dicha situación, el tribunal determinó que debido a que la dirección postal del peticionario era la misma del albacea, se le enviaría la correspondencia a la oficina del albacea para que la retuviera y se la entregara al peticionario cuando éste la reclamara.

El peticionario compareció al tribunal para solicitar que se dejara sin efecto la orden de retención por ser nula al haberse emitido en violación al debido proceso de ley, debido a que el peticionario no estuvo presente en dicha vista por no haber sido notificado de la misma. También alegó que la orden de retención dictada violaba las Secs. 1671-1677 del Consumer Credit Protection Act, 15 U.S.C. sec. 1671-1677. El tribunal *a quo* denegó la solicitud del peticionario mediante resolución y orden emitida el 15 de agosto de 1996. Al así hacerlo, el tribunal hizo un recuento de que el 27 de septiembre de 1994 dicho foro celebró una vista de desacato contra el peticionario donde este último le informó al tribunal que cualquier notificación que fuera dirigida a su persona debía ser enviada a la dirección de su hermano, Lic. Amancio Arias Guardiola. Ante la solicitud del peticionario, el tribunal le hizo las advertencias de que cualquier cambio de dirección debía informarlo al tribunal y que se le tendría por notificado, en lo sucesivo, a la dirección informada por él.

El tribunal también hizo constar en su resolución que el día de la vista, 1ro. de noviembre de 1995, el Lic. Amancio Arias Guardiola, hermano del peticionario, le informó al tribunal que el peticionario vive en una casa propiedad de la Sucesión, la cual no tiene buzón donde recibir la correspondencia. El tribunal señaló que continuaría enviando cualquier notificación a la dirección del Lic. Amancio Arias Guardiola, según lo había solicitado el peticionario. El tribunal recurrido hizo referencia a la

presunción de que toda carta dirigida y cursada debidamente por correo, fue recibida en su oportunidad. Regla 16 de Evidencia, 32 L.P.R.A. Ap. III, R.16.

En cuanto al planteamiento de falta de notificación, el tribunal señala que el peticionario se limitó a alegar que su hermano no le notificó de la vista en la cual el tribunal emitió la orden en controversia y que dicha alegación no constituye prueba suficiente para rebatir la presunción que opera en su contra. Asimismo, el tribunal destaca que fue el peticionario quien le informó al tribunal que cualquier notificación debía ser enviada a la dirección de su hermano y que la pretensión del peticionario de descargar en su hermano lo que por ley es una obligación personalísima que se espera que todo padre ejerza a cabalidad, claramente contraviene el interés apremiante que tiene el Estado de que los hijos reciban sus alimentos. A esos efectos, el tribunal determinó que no había habido una violación al debido procedimiento de ley del peticionario.

En la resolución recurrida, el tribunal hizo un recuento de que en una vista que se había celebrado previamente el 5 de junio de 1995 --en la cual el peticionario estuvo presente-- éste le informó al tribunal que su hermano, Lic. Amancio Arias Guardiola, como albacea de la Sucesión de su padre, debía depositar a su nombre la cantidad de $200,000 en un fideicomiso y que recibiría $1,300 mensuales de intereses provenientes de dicho fideicomiso. La parte promovida solicitó que se fijara la orden de retención por la cantidad de $630 sobre los intereses que recibiría el peticionario y éste no se opuso a ello.

En la vista del 1 de noviembre de 1995, el Lic. Amancio Arias Guardiola le informó al tribunal que, en el ejercicio de su albaceazgo, constituyó un fideicomiso a nombre del peticionario por la cantidad de $200,000. Este, además, ofreció la información pertinente al tribunal sobre el fideicomiso, para que éste pudiera emitir la orden de retención. El tribunal destacó que en todo momento el peticionario ha referido el pago de las pensiones alimentarias atrasadas a la Sucesión de su padre, por conducto de su hermano quien, en su capacidad de albacea de dicha Sucesión, se ha visto obligado a comparecer al tribunal para responder monetariamente por la obligación alimentaria del peticionario.

El tribunal recurrido también rechazó la contención del peticionario de que la retención de $630 mensuales excede el límite de 50%. Dicho foro basó su determinación en que la Sec. 1673 del Consumer Credit Protection Act, *supra*, sólo establece un límite a la cantidad embargable del ingreso del alimentante, sin que constituya dicho porcentaje una limitación total en la cuantía que un tribunal puede imponer por concepto de pensión alimentaria. ■ *Galarza Rivera v. Mercado Pagán*, ___ D.P.R. ___ (1995) **95 J.T.S. 164**. El tribunal señala que el estatuto federal no limita el embargo sobre todo tipo de ingreso sino que sólo restringe el embargo sobre aquellos ingresos devengados de un sueldo como empleado. *John O. Melby & Co. Bank v. Anderson*, 88 Wis. 2d 252, 276 N.W.2d 274 (1979). En ese sentido, señala que los ingresos depositados en una institución financiera, aun cuando los mismos provienen de salarios devengados de un empleado, no están sujetos a las limitaciones establecidas por la Sec. 1673. *Dunlop v. First Nat. Bank*, 399 F. Supp. 855 (D.C. Arizona, 1975).

El tribunal *a quo* también hace referencia al Art. 2, inciso 8, de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501, que establece la definición de lo que se considera ingreso para los efectos del estatuto. En la definición provista por la ley, se señala que ingresos son *"ganancias, beneficios, rendimientos, fondos, emolumentos"* o... cualquier otro pago que reciba el alimentante de cualquier persona natural o jurídica. ■ La Ley Orgánica de la Administración para el Sustento de Menores también faculta al tribunal a ordenar la retención de ingresos de un alimentante para satisfacer la pensión alimentaria. Art. 24, 8 L.P.R.A. sec. 523. ■ Por otra parte, el Art. 25 de la Ley, 8 L.P.R.A. sec. 524, establece que un tribunal podrá ordenar el embargo de, entre otros, *"los ingresos de cualesquiera fuentes de un alimentante"* para asegurar el pago de pensiones alimentarias atrasadas. ■

Al examinar los ingresos en este caso, el tribunal hace referencia a que el ingreso retenido proviene de un fideicomiso y aunque dicho ingreso cae bajo la definición de ingreso, el mismo queda excluido de la protección que provee la Sec. 1673 del estatuto federal. Por tal razón, el tribunal recurrido concluyó que la orden que emitió no contraviene lo dispuesto por la Ley Orgánica de la Administración para el Sustento de Menores ni el Consumer Credit Protection Act .

## II

El peticionario recurrió en *certiorari* antes nos y plantea que hubo una infracción al debido proceso de ley al no notificarle el tribunal recurrido de la vista celebrada el 1ro. de noviembre de 1995, en la cual se emitió la orden de retención de ingresos enmendada dirigida al banco en que está constituido el fideicomiso a favor del peticionario. Su otra contención es que los $630 que ordenó retener el tribunal recurrido para la pensión alimentaria de sus dos hijos menores --los cuales son embargados mensualmente de los intereses que genera un fideicomiso-- excede el límite de retención del cincuenta porciento (50%) que establece el Consumer Credit Protection Act, *supra*. Señala que esto es así, al comparar la suma de $630 con la mensualidad de $1,020.83. El peticionario enfatiza que él no está cuestionando la cantidad fijada por concepto de pensión, sino que su alegación es que la cantidad embargable excede el límite de retención de la Sec. 1673(b)(2). De igual forma, el peticionario señala que la jurisprudencia en que basó el tribunal su decisión no es aplicable a la controversia del caso de autos, debido a que ambos casos fueron resueltos con anterioridad a la vigencia de la Ley Orgánica de la Administración para el Sustento de Menores de 1986.

Por su parte, la parte recurrida compareció a oponerse al recurso y rebate la contención del peticionario al señalar que cuando no hay dependientes previos se puede embargar hasta un sesenta por ciento (60%) del sueldo, a tenor con la Sec. 1673(b)(2) del Consumer Credit Protection Act, *supra*. Cita a *Galarza Rivera v. Mercado Pagán, supra*. Al sacar el cómputo matemático, la recurrente señala que, a tenor con la hoja del Banco Popular, el ingreso por concepto del interés anual que genera el fideicomiso asciende a $13,363, que dividida en doce meses da el resultado de $1,113.42 y al aplicar la ley, como no hay dependientes previos, se podría embargar el sesenta porciento (60%) que daría la suma de $668.06, cuando la cuantía embargada es de $630. ■ De igual forma, tomando en consideración que el ingreso mensual fuese de $1,300, el 60% sería de $780 y el 50% sería de $650, ambas sumas mayores a los $630 realmente embargados. ■

La recurrida también indica que en el caso de autos, lo que se embargó no tiene que ver con salario, sueldo o jornal sino que es otra de las formas en que se pueden cobrar las pensiones alimentarias para los menores. Esta enfatiza que el estatuto federal no limita el embargo de otro tipo de ingreso que es lo que hay en este caso, ya que el peticionario no es empleado del banco ni se le está embargando salario alguno, cuando la ley lo que restringe es el ingreso por concepto de salarios, sueldos o jornal. Por otro lado, la parte recurrida destaca el hecho de que el peticionario nunca ha cumplido con el pago de la pensión alimentaria y que han sido terceras personas las que han tenido que pagar por él, por lo que de no retener la cantidad de dinero ordenada, el peticionario no pagaría la pensión en cuestión.

## III

Examinados los argumentos de ambas partes, resolvemos expedir el auto y confirmar la resolución recurrida. En primer lugar, atenderemos el planteamiento del peticionario sobre violación al debido proceso de ley por alegadamente no haber sido notificado por el tribunal recurrido de la vista del 1ro. de noviembre de 1995. La Sec. 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. II, Sec. 7, al igual que las Enmiendas V y XIV de la Constitución de Estados Unidos, garantizan que *"...ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. "En el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. Asimismo, como principio fundamental del debido proceso se ha consagrado el derecho de toda persona a ser oída antes de ser despojad[a] de algún interés protegido". Rivera Rodríguez & Co. v. Lee Stowell, etc.,* ___ D.P.R. ___ (1993), **93 J.T.S. 111**, a la pág. 10,931.

Para constatar la falta de notificación alegada por el peticionario, examinamos los autos originales del Tribunal de Primera Instancia y tomamos conocimiento judicial de que el tribunal *a quo* emitió una resolución y orden el 18 de octubre de 1995, mediante la cual señaló la vista del 1ro. de noviembre de 1995. Dicha resolución y orden establecía en su parte final lo siguiente:

*"La presente resolución y orden será notificada por la parte promovente, conforme lo requiere la Regla 4.4 de Procedimiento Civil, vigente. Así también, notificándole por correo.*

*NOTIFIQUESE."*

En la certificación que hizo secretaría sobre la notificación de dicha resolución y orden surge que el Lic. Amancio Arias Guardiola fue notificado a la siguiente dirección: P.O. Box 13727, San Juan, Puerto Rico, 00908-3727 y el peticionario Jorge Arias Guardiola a esta otra dirección: Calle A-5, Villa Caparra, Guaynabo, Puerto Rico, 99990-0969. Como vemos, ambas direcciones no coinciden y al peticionario no se le notificó a la dirección del albacea, según el tribunal recurrido lo había dispuesto desde la vista de 27 de septiembre de 1994. ■

A pesar de que el peticionario no fue notificado a la dirección que el tribunal recurrido había ordenado, éste no nos ha demostrado que haya sufrido perjuicio alguno por lo dispuesto en la vista del 1ro. de noviembre de 1995 o que tuviese una defensa que hubiese podido esgrimir en dicha vista para evitar que el tribunal emitiera la orden de retención de ingresos enmendada. Su planteamiento sobre violación al debido proceso de ley se desvanece dado el hecho que surge de la resolución recurrida en la que el tribunal *a quo* señala que la pensión de $630 fue fijada en una vista celebrada previamente el 5 de junio de 1995, en la que el peticionario sí estuvo presente. En dicha ocasión, el peticionario no se opuso a la petición de la promovente de que se fijara la orden de retención por la cuantía de $630 sobre los intereses que el peticionario recibiría del fideicomiso. De hecho, el tribunal llegó a emitir el 5 de junio de 1995 dicha orden de retención de ingreso por la cuantía de $630. La orden en cuestión iba dirigida al albacea, Lic. Amancio Arias Guardiola. En la vista del 1ro. de noviembre de 1995, el Lic. Amancio Arias Guardiola, se limitó a ofrecerle al tribunal la información necesaria para que el Tribunal pudiera emitir la orden de retención dirigida al banco en el cual éste había establecido el fideicomiso a favor del peticionario. El tribunal procedió entonces a emitir una orden de retención de ingresos enmendada por igual cantidad de $630, pero esta vez dirigida al Banco Popular.

Asimismo, surge de los autos que el peticionario había presentado una moción al tribunal recurrido de fecha 30 de mayo de 1995, en la cual se había allanado a que su hermano albacea, Lic. Amancio Arias Guardiola, le enviara la pensión alimentaria a la parte recurrida. ■

El Debido Proceso de Ley que ahora invoca el peticionario, no es, en palabras del Tribunal Supremo, *"abstracción apocalíptica que de sólo invocarla infunda temor de Dios al tribunal y paralice al adversario. Como toda regla habrá de aplicarse con riguroso respeto a los derechos sustanciales de todas las partes afectadas. Su naturaleza... es circunstancial y pragmática".* *Domínguez Talavera v. Tribunal Superior,* 102 D.P.R. 423, 428 (1974) (escolio omitido). Luego de evaluado el planteamiento sobre violación al debido proceso de ley, concurrimos con el Tribunal de Primera Instancia en que en este caso no ha habido tal violación al debido proceso de ley. En virtud de lo señalado anteriormente, resolvemos que el primer error señalado no se cometió.

Pasamos a atender el segundo apuntamiento de error esbozado por el peticionario a los efectos de que la orden de retención de ingresos dictada excede el límite establecido en la Sec. 1673(b)(2) del Consumer Credit Protection Act, *supra,* así como lo dispuesto en el Art. 24 de la Ley Orgánica de la Administración para el Sustento de Menores, *supra.* Este no tiene razón en su planteamiento. Procedamos a examinar ambas disposiciones legales. En primer lugar, la Sec. 1672 del Consumer Credit Protection Act, 15, sec. 1672, define lo que es ingreso, ingreso neto y embargo de la siguiente manera:

*"For the purposes of this subchapter:*

*(a) The term "earnings" means compensation paid or **payable for personal services**, whether denominated as **wages, salary, commission, bonus,** or otherwise, and includes periodic payments pursuant to a pension or retirement program..* (Subrayado nuestro.)

*(b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.*

*(c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."*

Por su parte, el Art. 24, inciso 6, de la Ley Orgánica de Administración para el Sustento de Menores, dispone en lo pertinente como sigue:

*"(6) En ningún caso la cantidad a ser retenida del **sueldo o salario del deudor alimentante** para el pago de la pensión corriente de cada mes, para el pago de los atrasos, si los hubiere, y para sufragar el costo de la retención que realice el patrono o pagador, conforme se dispone en el inciso (9)(c) de esta sección podrá exceder los límites dispuestos por la Sección 303(b) del Consumer Credit Protection Act, no obstante lo dispuesto en la sec. 1130 del Título 32."*

De las disposiciones anteriores, surge que la limitación establecida tanto en el estatuto federal como en la Ley Orgánica de la Administración para el Sustento de Menores sobre el porcentaje máximo que se puede embargar o retener para el pago de pensión alimentaria aplica a lo que se considera como sueldo o salario del deudor alimentante. Sin embargo, hay que hacer la distinción entre lo que significa ingreso en el estatuto federal y en nuestra ley. La definición de ingreso en el Consumer Credit Protection Act se refiere a ingresos por salarios, comisiones, bonos u otro, relacionados con la prestación de servicios personales. En nuestra ley, la definición de ingreso es sumamente abarcadora e incluye no sólo los provenientes de sueldos sino también de otras fuentes entre las que se encuentra la de intereses. Por tal razón, bajo la Ley Orgánica de la Administración para el Sustento de Menores un tribunal puede emitir una orden de retención contra cualquiera de las partidas comprendidas en la definición de ingreso. Sin embargo, nuestra ley en su Art. 24, inciso 6, *supra*, al hacer referencia al Consumer Credit Protection Act y establecer la limitación en la cantidad que puede ser retenida, hace la salvedad de referirse específicamente al salario o sueldo del alimentista.

En el caso ante nos, el ingreso que recibe el peticionario corresponde a los intereses que devenga de un fideicomiso establecido a su favor por disposición testamentaria de su padre. Por tal razón, dicho ingreso no recae dentro de la definición de ingreso del estatuto federal, en vista de que no recae dentro de la definición de ingreso del estatuto federal, en vista de que no es el producto de servicios profesionales, salarios o sueldos. Tampoco recae dentro de la limitación establecida en el Art. 24, inciso 6, de la Ley Orgánica de la Administración para el Sustento de Menores. Por consiguiente, no es aplicable a la partida de intereses que recibe el peticionario la limitación del estatuto federal incorporada en nuestra ley. Así lo determinó el Tribunal de Primera Instancia y este Tribunal concurre con dicho dictamen. Por tal razón, resolvemos que el segundo error tampoco se cometió.

Con estos antecedentes, se expide el auto y se confirma la resolución recurrida.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 97 DTA 166

**1.** Tomamos conocimiento judicial de que ese dinero correspondía a pensiones alimentarias atrasadas. Véase, Orden de 14 de febrero de 1995.

**2.** La Sec. 1673 del Consumer Credit Protection Act dispone como sigue:

*"Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed*

*(1) 25 per centum of his disposable earnings for that week, or*

*(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum*

*hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).*

*(b) Exceptions*

*(1) The restrictions of subsection (a) of this section do not apply in the case of*

*(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.*

*(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed 50 per centum.*

*(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and*

*(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.*

*(c) Execution of enforcement of garnishment order or process prohibited*

*No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section."*

**3.** El Art. 2, incisos 8 y 9, de la Ley Orgánica de la Administración para el Sustento de Menores definen lo que es ingreso e ingreso neto como sigue:

(Subrayado nuestro.)

(9) *"Ingreso neto"* - aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente.

**4.** El Art. 24 de la Ley Orgánica de la Administración para el Sustento de Menores establece en lo pertinente como sigue:

*"(1)(a) El Tribunal el Administrador [sic], conforme a las disposiciones de este Capítulo, al momento de fijar o modificar una pensión alimentaria, emitirá inmediatamente una orden fijando o modificando la pensión alimentaria y requiriendo al patrono del alimentante o a cualquier persona que sea pagador con relación al alimentante, conforme se define en la sec. 5021 de este título, que retenga o descuente en el origen, de los ingresos del alimentante, independientemente de si existen o no atrasos en el pago de pensión alimentaria, las cantidades señaladas en la orden para satisfacer el pago de la pensión, y de cualquier deuda por razón de pensiones vencidas y no pagadas. Estas cantidades serán determinadas al momento de emitirse la orden de*

*retención. Esta orden no se emitirá separada de aqu[é]lla que contenga la adjudicación, revisión o modificación del derecho del alimentista a la pensión o que adjudique cualquiera otra controversia entre las partes, salvo que las partes lleguen por escrito a un acuerdo alterno mediante el cual se provea otra alternativa, o cuando el Tribunal o el Administrador determine que existe justa causa para no notificar la orden de inmediata retención el descuento en el origen de los ingresos del alimentante. En estos casos excepcionales, la orden de retención de ingresos no se notificará al patrono o pagador al momento de fijación o modificación de la pensión alimentaria, pero se apercibirá al alimentante que la misma será ejecutable en el momento que éste incurra en un atraso equivalente a un mes en el pago de pensión alimentaria. Cuando ocurra dicho incumplimiento, el Secretario del Tribunal o el Administrador procederá de conformidad con el procedimiento establecido en el inciso 1(b) de esta sección."*

**5.** El Art. 25 de la Ley de Sustento de Menores dispone lo siguiente:

*"(1) Cualquier Tribunal, el Administrador o Juez Administrativo con competencia sobre asuntos referentes a pensiones alimentarias concederá mediante orden, bajo las Reglas de Procedimiento Civil, Ap. III del Título 32 y de este Capítulo, un embargo, el embargo de fondos en posesión de un tercero, la reclamación y entrega de bienes muebles, el embargo de los ingresos de cualesquiera fuentes de un alimentante, el embargo de bienes muebles o inmuebles, y cualquiera otra medida apropiada para asegurar el pago de pensiones alimentarias atrasadas."*

**6.** La suma de $1,113.42 es la cantidad que el albacea Lic. Amancio Arias Guardiola informó al tribunal que recibe el peticionario por concepto de intereses de un fideicomiso a su favor.

**7.** La suma de $1,300 es la que originalmente el albacea Lic. Amancio Arias Guardiola le informó al tribunal que el peticionario recibiría por concepto de intereses del fideicomiso que establecería a favor de éste.

**8.** En la minuta de la vista celebrada el 27 de septiembre de 1994, que fue notificada como resolución, de la cual tomamos conocimiento judicial, el tribunal *a quo* señaló lo siguiente:

*"Se hace constar que la dirección del señor promovido es la misma del Lcdo. Amancio Arias Guardiola."*

**9.** El texto de la moción es el siguiente:

*"Comparece el co-peticionario Jorge Arias Guardiola por su propio derecho y ante este Honorable Tribunal muy respetuosamente ALEGA, EXPONE Y SOLICITA:*

......

*3. Que hize [sic] un acuerdo con mi hermano, o sea, el Albacea Testamentario, para que del dinero que me corresponde le cnvíe la pensión alimenticia [sic] a la co-peticionaria Jazmín Nadal Arroyo, para así evitarme problemas en el Tribunal.*

*4. Que solicito de este Honorable Tribunal muy respetuosamente se cite al Lcdo. Amancio Arias Guardiola a la vista que se señale con relación a estos incidentes, ya que éste es quién tiene a su cargo los bienes dejados por mi padre, del cual soy heredero, y no estoy recibiéndo [sic] suma alguna de dichos bienes.*

**10.** Como bien señaló nuestro Tribunal Supremo en *Galarza Rivera v. Mercado Pagán, supra*, a la pág. 415:

*"La Sección 1673 no es otra cosa que un mecanismo de protección al consumidor que limita un procedimiento de cobro. El propósito de esta Sección al establecer un límite porcentual a la cantidad de dinero que puede ser retenido del ingreso de un persona es proveerle un alivio al consumidor para que éste pueda cumplir con sus compromisos económicos sin tener la necesidad de declararse en quiebra personal."* U.S. Code Cong. and Adm. News. P.L.90-321, Legislative History, págs. 1962-1966.

Este propósito nada tiene que ver con la obligación de proveer alimentos. La Sección 1673 únicamente establece un límite a la cantidad embargable del ingreso del alimentante sin que constituya dicho porciento [sic, por ciento] una limitación al total que un tribunal puede imponer por concepto de pensión alimentaria.