SECURITY NATIONAL BANK OF RENO, GUARDIAN OF THE ESTATE OF DEFENDANT, DALE EUGENE SOLLARS, AN INSANE PERSON, APPELLANT, v. JEFF McCOLL AND MARGARET JEAN McCOLL, HUSBAND AND WIFE, RESPONDENTS.

No. 4615

October 28, 1963                    385 P.2d 825

*Morse & Graves,* of Las Vegas, and *Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Appellant.

*Foley Brothers,* of Las Vegas, for Respondents.

*W. H. MacDonald,* of Reno, Amicus Curiae.

## OPINION

By the Court, BADT, C. J.:

Appellant presents two matters for determination: (1) whether bank funds on deposit to the credit of Security National Bank of Reno as the duly appointed guardian of the estate of Dale Eugene Sollars, an insane person, by order of the Second Judicial District Court, Washoe County, Nevada, are in custodia legis and thus exempt from attachment issuing out of the Eighth Judicial District Court, Clark County, Nevada; and (2) whether such funds are exempt from attachment on claims of creditors by reason of the provisions of § 3101, Title 38, U.S.C., being a portion of Chapter 53, entitled "Special Provisions Relating to [Veterans'] Benefits." As a reversal must follow by reason of the exemption created by the federal act under the second question presented, it is unnecessary to determine the first question.

On October 15, 1953, Sollars shot and severely injured Margaret McColl. On December 11, 1953, Sollars was committed to Nevada State Hospital for Mental Diseases. On April 9, 1954, the appellant bank was appointed guardian of his estate by order of the Second Judicial District Court, Washoe County, Nevada. On October 13, 1955, Jeff and Margaret McColl, husband and wife, filed a complaint in the Eighth Judicial District Court, Clark County, Nevada, against several defendants, including Security National Bank of Reno as guardian of the estate of Sollars, an insane person. The guardian bank was duly served, and filed its answer. On August 11, 1960, plaintiffs attached funds held by the guardian bank for the benefit of Sollars and which were on deposit in appellant's bank. These funds comprised in their entirety payments paid to the guardian by the Veterans' Administration, plus a small amount of accrued interest. The balance at the time of attachment was in the sum of $5,600.48. The present appeal is from the Clark County court's denial of the guardian's motion to discharge the attachment. The pertinent portion of the federal act reads as follows: "§3101. Nonassignability and exempt status of benefits.

" (a) Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments."

The funds in question, against which the attachment was levied, were maintained by the guardian bank in a cash savings account from which the funds could have been and actually have been withdrawn upon demand for the use of the incompetent. A transcript of such

account shows a number of such withdrawals. It also appears that since the date of the service of the attachment no funds have been paid to the Nevada State Hospital for the care and subsistance of the incompetent, and that as of January 31, 1962, there was due and payable to the hospital for such care and subsistence the sum of $2,190.71.

Appellant cites to us in support of its appeal Porter v. Aetna Casualty and Surety Co., 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407, decided June 11, 1962. In that case United States District Court for the District of Columbia held the fund exempt under 38 U.S.C. § 3101(a). The Court of Appeals for the District of Columbia reversed, but the Supreme Court, on certiorari, reversed and held the funds exempt.

Porter v. Aetna Casualty and Surety Co. is a complete answer to respondents' contention that deposits in an interest-bearing savings account are investments and are thus not subject to the exemption under the provision that the exemption shall not " 'extend to any property purchased in part or wholly out of such payments.' " The court referred to Lawrence v. Shaw, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623, 108 A.L.R. 1102, for support of its holding, defining the test to be "whether as so deposited the benefits remain subject to demand and use as the needs of the veteran for support and maintenance required." Lawrence v. Shaw also held that the allowance of interest on such deposits would not destroy the exemption.

Respondents seek to distinguish Porter because the judgment against the veteran was there based on contract, while the present judgment was based on tort. They cite sundry text discussions in which such distinction is made and cases where there is a distinction recognized under special statutes. They have no significance here. The federal statute specifically excepts certain claims against which the exemption does not apply. Respondents would inject into the statute an additional exception. This cannot be done.

Respondents further seek an analogy with the bankruptcy law which provides that the liability upon an award of a judgment for punitive damages (which is in

part the case here) is a liability of the debtor which cannot be discharged in bankruptcy. This appears to be largely the basis of the decision by the court below in which the learned judge stated: "The court is impressed with the authorities presented by counsel for plaintiffs to the effect that this obligation is one which could not be discharged in bankruptcy. By the very nature of the claim it appears that the defendant, Dale Eugene Sollars, committed a willful act against one or both of the plaintiffs in this action for which the plaintiffs recovered judgment. It would appear logical to the court that the defendant should not be permitted to accumulate funds from whatever source they may come, whether they be by reason of the Veterans' Administration or any other source over and above his immediate needs." The learned district judge then notes that the State of Nevada would take over such obligations as are necessary for the veteran's support and maintenance in the Nevada State Hospital. However, such application of logic cannot destroy the exemptions of the federal act, nor can it suffice to transfer the liability for the veteran's support to the state, against the provisions of the federal statute as construed by the United States Supreme Court which make the funds subject to use for the veteran's needs, nor to deplete the exempt funds and prevent their being applied to the costs of administration of the guardian's estate and payment of the fees to the guardian and its attorney. The asserted analogy to the bankruptcy laws is without point here.

Respondents rely on Carrier v. Bryant, 306 U.S. 545, 59 S.Ct. 707, 83 L.Ed. 976 (1939). Such case was decided two years after Lawrence v. Shaw, supra, and was to the effect that negotiable notes and United States bonds purchased with veterans' benefits and "held as investments" had no federal statutory immunity. But it was with reference to and full cognizance of both Lawrence and Carrier that Porter was determined.

Respondents also rely on Hale v. Gravallese, 340 Mass. 722, 166 N.E.2d 557 (1960). There, relying on In re Bowen, 141 Ohio St. 602, 49 N.E.2d 753, the Massachusetts court held that a checking account is subject to the exemption "but that savings accounts * * * are

not." The Ohio holding was made by the extension of the rule of Carrier v. Bryant (that investment in the form of negotiable notes and United States bonds were not exempt) to savings accounts. These cases we are compelled to reject. Porter v. Aetna Casualty and Surety Co., supra.

The order appealed from is reversed, with costs, and the case remanded with directions to the district court to enter an order granting the motion to quash the writ.

McNAMEE, J., and BARRETT, D. J., concur.

THOMPSON, J., being disqualified, the Governor commissioned Honorable John W. Barrett, Judge of the Second Judicial District Court, to sit in his place.