**In re Ronald L. NORRIS and Beverly Jean Norris, a/k/a Jeanne Norris, Debtors.**

**Bankruptcy No. BK–S–96–21845–LBR.**

United States Bankruptcy Court, D. Nevada.

Nov. 26, 1996.

464

Terry V. Leavitt, Las Vegas, NV, for Debtor.

CiCi Cunningham, Lisowski Law Firm, Chtd., Las Vegas, NV, for Chapter 7 Trustee.

## ORDER ALLOWING EXEMPTION

LINDA B. RIEGLE, Chief Judge.

On March 29, 1996, the debtors, Ronald and Beverly Norris, filed a Chapter 7 bankruptcy petition. They filed two amended schedules on June 5, 1996. On their amended Schedule C they claimed $2,867 as "Debtor's Gross Paycheck for 3/29/96 ... up to 75%" exempt under N.R.S. § 21.090(1)(g) (75% of disposable earnings exemption). On the day of the bankruptcy filing, debtor Ronald Norris's wages in the amount of $2,275.28 were deposited directly into his checking account at his bank.[1] The account contained $35.96 just prior to the deposit. It is undisputed that the deposit on the day of the

---

**1.** The debtors attached a copy of their checking account statement in support of their Opposition. The deposit on March 29, 1996 is identified as "Clark County Payroll $2,275.28."

petition was for wages that were earned pre-petition.[2]

The trustee objects to the debtors' exemption. He contends that once Ronald Norris' wages were deposited into his checking account, those funds became commingled with property of the estate and thereby lost their exempt status. The trustee maintains that "the commingling of [Norris'] paycheck with property of the estate effectively transforms the paycheck into estate property."

In bankruptcy actions, the validity of a claimed state exemption is controlled by the applicable state law. *In re Goldman,* 70 F.3d 1028, 1029 (9th Cir.1995). A bankruptcy court is bound by the state's rules of construction when interpreting a state statute. *Id.* The trustee has the burden of proving that the exemption is improper. Fed.R.Bankr.P. 4003(c).

Pursuant to N.R.S. § 21.090(1)(g), Nevada provides for the exemption of wages as follows:

1. The following property is exempt from execution, except as otherwise specifically provided in this section:

-------

(g) For any pay period, 75% of the disposable earnings of a judgment debtor during that period, or for each week of the period 30 times the minimum hourly wage prescribed by section 6(a)(1) of the federal Fair Labor Standards Act of 1938 and in effect at the time the earnings are payable, whichever is greater. Except as otherwise provided in paragraphs (n), (r) and (s), the exemption provided in this paragraph does not apply in the case of any order of a court of competent jurisdiction for the support of any person, any order of a court of bankruptcy or of any debt due for any state or federal tax. As used in this paragraph, "disposable earnings" means that part of the earnings of a judgment debtor remaining after the deduction from those earnings of any amounts required by law, to be withheld.

The statute is silent as to whether funds retain their exempt status as "disposable earnings" once disbursed to a debtor's checking account. Furthermore, the Nevada Supreme Court has not ruled on this issue. When a decision turns upon applicable state law and the state's highest court has not decided the issue, a federal court must use its best judgment to ascertain how the state court would decide that issue. *General Motors Corp. v. Doupnik,* 1 F.3d 862, 865 (9th Cir.1993). Even dicta from the state court, while not controlling, is relevant to this inquiry. *Henkin v. Northrop Corp.,* 921 F.2d 864, 867 (9th Cir.1990). The court may also be aided by looking to well-reasoned decisions from other jurisdictions. *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). The court must interpret a statute consistent with the intent of the legislature, must ascribe an intent which will accomplish a reasonable result, and must resolve any doubt as to legislative intent so as to avoid an absurd result. *Steward v. Steward,* 111 Nev. 295, 302, 890 P.2d 777 (1995). A statute may be interpreted by considering the reason or spirit of the law, the causes which induced the legislature to enact it, and the entire subject matter and policy of the law. *Cragun v. Nevada Pub. Employees' Ret. Bd.,* 92 Nev. 202, 205, 547 P.2d 1356 (1976).

The debtor's earnings represented by the direct deposit to his checking account are readily traceable and retain their exempt status. In Nevada, state exemption statutes are liberally and beneficially construed. *See Jackman v. Nance,* 109 Nev. 716, 718, 857 P.2d 7 (homestead exemption); *Elder v. Williams,* 16 Nev. 416 (1882) (occupation-related exemption). *See also, In re Turner,* 186 B.R. 108, 113 (9th Cir. BAP 1995) (state exemption statutes are to be liberally construed given their manifest purpose). The historical purpose of exemptions in Nevada is to protect a debtor by permitting him to

---

**2.** While it is true that post-petition earnings are not property of the estate of a Chapter 7 debtor (11 U.S.C. § 541(a)(6)), earnings from services which were performed prior to bankruptcy but were paid after the filing of the petition are property of the estate (*In re Ryerson,* 739 F.2d 1423, 1426 (9th Cir.1984)). For this reason, it is unnecessary to determine whether the paycheck was deposited before or after the petition was filed at 1:52 p.m. on March 29th.

retain the basic necessities of life so that after the levy of nonexempt property he and his family will not be left destitute. *See* Nev. Const. Art. I, § 14 ("[t]he privilege of the debtor to enjoy the necessary comforts of life shall be recognized by ... exempting a reasonable amount of property from seizure or sale"); *Kreig v. Fellows*, 21 Nev. 307, 310, 30 P. 994 (1892) (occupation-related exemption; the "general policy of all exemption laws is that the unfortunate debtor shall not be left without the means of supporting himself and his family in the vocation usually pursued by him.").

██ Nevada has long recognized the partial exemption of a debtor's wages, and first enacted the income exemption statute in 1911.[3] While there is no legislative history suggesting the purpose for N.R.S. § 21.090(1)(g),[4] it is apparent that it was intended to promote the basic purpose of the exemption statutes in general: namely, to preserve part of the debtor's earnings for the benefit of himself and his family. *See also, Miller v. Monrean*, 507 P.2d 771 (Alaska 1973) (purpose of income exemption statutes are to encourage debtor rehabilitation, preserve part of the debtor's earnings for benefit of his family, and to prevent debtor's family from being destitute).

In order to permit a wage earner to enjoy any benefit from the protection afforded N.R.S. § 21.090(1)(g), it is necessary to accord the wage earner a reasonable opportunity to negotiate the "disposable earnings" and spend the funds, otherwise the exemption would be rendered meaningless. A deposit of the earnings, whether by the debtor or directly by the employer, should not cause the statutorily exempt wages to lose their exempt status as long as the proceeds of the account are traceable to those earnings. The deposited earnings in this case were readily withdrawable and retained the quality of "disposable earnings" within the meaning of N.R.S. § 21.090(1)(g).[5]

While the Nevada Supreme Court has not addressed this issue in an authoritative holding, it has provided some guidance as to how it would rule. In *Sec. Nat'l Bank of Reno v. McColl*, 79 Nev. 423, 385 P.2d 825 (1963) the judgment creditor of an incompetent veteran attached funds on deposit in the bank account of the veteran's guardian. The funds were, in their entirety, paid to the veteran's guardian by the Veteran's Administration and maintained by the guardian in a savings account, which accrued a small amount of interest. By federal statute, veterans' benefits were exempt from attachment by creditors.[6] The precise question posed in *Sec. Nat'l Bank of Reno* was whether the funds were exempt from attachment given that they were on deposit in a savings account

---

3. Revised Laws of Nevada § 5288 (1912) stated:

What exempt from execution.

Sec. 346. The following property is exempt from execution, except as herein otherwise specially provided:

-----

8. The earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of execution or attachment, when it appears, by the debtor's affidavit or otherwise, that such earnings are necessary for the use of his family, residing in this state, supported in whole or in part by his labors; but where debts are incurred by any such person, or his wife or family, for the common necessaries of life, or have been incurred at a time when the debtor had no family, residing in this state, supported in whole or in part by his labor, the one-half of such earnings above mentioned is nevertheless subject to execution, garnishment, or attachment to satisfy debts so incurred.

4. Generally, unless specially provided for, there is no legislative history available in Nevada prior to 1965. The Assembly adopted a standing rule in 1973 to keep minutes of the meetings of the standing committees. The Senate adopted a similar rule in 1977. Some, but not all, standing committees kept minutes of their meetings beginning in 1965.

5. The statutory scheme of N.R.S. § 21.090(1)(g) protects a judgment debtor's right to receive 75% of the disposable earnings for "any pay period." It is neither contended here nor decided that a bankruptcy debtor may, under § 21.090(1)(g), claim an earnings exemption for multiple "pay periods" of an ongoing income stream.

6. 38 U.S.C. § 3101(a) read, in pertinent part:

Payments of benefits due or to become due under any law administered by the Veterans' Administration ... made to, or on account of, a beneficiary ... shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

held by the guardian for the veteran's benefit. Still, this case is instructive because the Nevada Supreme Court held that, under the federal act, the funds retained their exempt status after being deposited in the bank account and were exempt from attachment by the creditor.

Other jurisdictions have recognized that statutorily exempt funds do not lose their exempt status when deposited into a personal checking account. *See In re Caslavka*, 179 B.R. 141, 147 (Bankr.N.D.Iowa 1995) (construing Iowa law that "protection afforded by the exemption would be rendered meaningless if exempt status is lost by negotiating the paycheck") (citing *MidAmerica Savs. Bank v. Miehe*, 438 N.W.2d 837, 839 (Iowa 1989); *In re Arnold*, 193 B.R. 897 (Bankr. W.D.Mo.1996) ("[i]t elevates form over substance to claim that the [paycheck in debtor's] hand was wages, but the check in his checking account was not"); *In re Frazier*, 116 B.R. 675 (Bankr.W.D.Wis.1990) (exempt disability benefits check deposited into bank account with other exempt funds retained exempt status; benefits were "readily identifiable").

At least two United States Supreme Court opinions have also recognized that exempt funds do not lose their exempt status upon deposit if the funds in the account can be traced to exempt funds. *See Porter v. Aetna Casualty & Sur. Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) (veterans' benefits) and *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (welfare benefits). In *Porter*, 370 U.S. at 159, 82 S.Ct. at 1232, the United States Supreme Court held that veterans' benefits retained their exempt status after being deposited in a savings account, reasoning that:

> Since legislation of this type should be liberally construed, to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof, we feel that deposits such as are involved here should remain inviolate. The Congress we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Id.* at 162, 82 S.Ct. at 1233 (citations omitted). And 31 Am.Jur.2d *Exemptions* § 224 (1989) states:

> There is authority that a deposit of exempt funds in a bank does not affect a debtor's exemption, nor change the exempt character of the fund, so long as the source of the exempt funds is reasonably traceable. If it is impossible to separate out exempt from nonexempt funds, the general rule is that an exemption cannot lie. This rule has been applied, though not without exception, to a deposit of exempt wages, exempt compensation awards, exempt veterans' benefits, and exempt insurance proceeds or funds.

■ Finally, the Nevada Legislature has specifically excluded commingled funds in another Nevada execution and attachment statute. N.R.S. § 612.710 expressly provides that otherwise exempt benefits are not exempt from execution if they are commingled "with other money of the recipient." [7] Such an exclusion is absent from N.R.S. § 21.090(1)(g). It is a basic tenet of statutory construction that if the legislature includes a qualification in one statute, but omits the qualification in another related statute, it should be inferred that the omission was intentional. *Williams v. Matthews*, 248 Va. 277, 448 S.E.2d 625, 629 (1994); *Perlenfein and Perlenfein*, 316 Or. 16, 848 P.2d 604, 607–608 (1993). *See also Ex Parte Arascada*, 44 Nev. 30, 35, 189 P. 619 (1920) (failure of statute to include a matter is indication that exclusion was intended). It is assumed that the provisions of N.R.S. § 21.090, the statutory scheme for exemptions, were carefully drafted; they are a result of a legislative drafting process which began in 1911 and they have been the subject of numerous legislative revisions since that

---

7. N.R.S. § 612.710 provides that unemployment compensation benefits are exempt from any remedy for the collection of all debts "if they are not mingled with other money of the recipient."

time.[8] Based upon this premise, this Court will not supply a statutory provision when it is reasonable to suppose the Legislature intended to omit it.

In this case, the parties agree that the debtor's earnings were partially exempt from execution prior to deposit pursuant to N.R.S. § 21.090(1)(g). Furthermore, the trustee does not contend, nor has he provided any proof, that any nonexempt funds have been deposited in the account.[9] Thus, the source of the funds is directly traceable.

Accordingly, this Court holds that the trustee has not met his burden of proving that the exemption is not properly claimed. The exemption is allowed, and shall be calculated pursuant to N.R.S. § 21.090(1)(g) upon the $2,275.28 shown as a direct payroll deposit in Debtors' Opposition, Exh. "A."

IT IS SO ORDERED.

---

8. N.R.S. § 21.090 has been amended fifteen times since its origin in 1911. In 1971, N.R.S. § 21.090(1)(g) was amended to increase the disposable earnings exemption from 25% to 75%.

9. The checking account statement provided by the debtors as an exhibit to their Opposition shows that an unidentified deposit of $568.10 was made to the account on April 8, 1996. This deposit was made several days after the petition was filed, and thus Ronald Norris' earnings were readily identifiable on the date of the petition. *See In re Kolsch*, 58 B.R. 67, 69 (Bankr.D.Nev. 1986) (*right to exemptions is determined as of the date the petition is filed*).