**In re Scott Wayne ADCOCK and Cherish Marie Adcock,
Debtors.**

**Nos. 99–1233–MLB, 98–12604–7.**

United States District Court,
D. Kansas.

March 10, 2000.

Mary E. May, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Mary E. May, trustee.

David G. Arst, Arst & Loyd, Wichita, KS, for debtors.

### MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court are the following:

1. Trustee's brief (Doc. 3);

2. Debtors' brief (Doc. 7); and

3. Trustee's reply (Doc. 8).

#### Nature of the Case

This is an appeal by the bankruptcy trustee from a Memorandum Opinion and Order issued by United States Bankruptcy Judge Julie A. Robinson (Ex. A attached). Judge Robinson held that wages on deposit in the debtors' general checking account qualify as exempt property pursuant to K.S.A. 60–2310(b), thereby overruling the trustee's objection to exemption and motion to compel turnover. Applying the statute, Judge Robinson ordered that seventy-five percent of the wages on deposit were exempt and that the remaining twenty-five percent were subject to turnover. The trustee filed a timely appeal. The parties agree that the applicable standard of review is de novo.

#### Stipulated Facts

Scott Wayne Adcock and Cherish Marie Adcock (debtors) filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 17, 1998. As of the date the debtors' bankruptcy was commenced, the debtors had $1261.22 on deposit in their general checking account. The entire $1261.22 comprised wages deposited electronically. There is no issue regarding commingling.

On August 10, 1998, the debtors filed an amendment to Schedule C to include

wages as exempt property pursuant to K.S.A. 60–2310(b). On August 17, 1998, the trustee filed an objection to the claimed wage exemption and requested turnover of the funds.

### Statement of Issues

1. Whether seventy-five percent of the wages on deposit in the debtors' checking account qualifies as exempt property pursuant to K.S.A. 60–2310(b); and

2. If the deposited wages are not exempt, should the trustee be permitted to recover them where distribution to the creditors will or might be de minimis.

Because Judge Robinson answered the first issue in the affirmative, she did not reach the second issue.

### K.S.A. 60–2310

K.S.A. 60–2310 provides in pertinent part as follows:

(b) *Restriction on wage garnishment.* Subject to the provisions of subsection (e), only the aggregate disposable earnings of an individual may be subjected to wage garnishment. The maximum part of such earnings of any wage earning individual which may be subjected to wage garnishment for any workweek or multiple thereof may not exceed the lessor of: (1) Twenty-five percent of the individuals aggregate disposable earnings for that workweek or multiple thereof;

### Conflicting Decisions

An interesting aspect of this appeal is that Judge Robinson's conclusions directly conflict with those of United States Bankruptcy Judge John K. Pearson in his Memorandum Decision in *In re Doughman,* decided just over a month following Judge Robinson's decision. Judge Pearson's decision is attached as Exhibit B. Judge Pearson held that the restrictions of K.S.A. 60–2310(b) apply only to wages before they are paid to the debtor and that once the wages are deposited in a bank account, the bank balance on the date of filing is an asset of the estate.

### Positions of the Parties

The trustee, who has the burden to demonstrate that an exemption does not apply, argues K.S.A. 60–2310(b) has no application to this case. She points out that the statute specifically concerns "restriction on wage garnishment" which is defined by K.S.A. 60–2310(a)(3) as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt . . . ." The term "earnings" is defined by subsection (1) of the statute as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise . . . ." The trustee asserts that her actions were not in the nature of a garnishment and, in any event, that the protections afforded by section 2310(b) apply only to wages held by the employer. In other words, the statutory exemption does not apply once the wages have left the control of the employer.

The debtors argue for a liberal interpretation of section 2310(b). They point out that even though section 2310(b) refers to "wage garnishment," the overall scope of Chapter 60, Article 23 is "exemption" and that exemption laws are to be liberally construed in favor of the debtor. *In re Meckfessel,* 67 B.R. 277, 278 (Bankr. D.Kan.1986) and *Coward v. Smith,* 6 Kan. App.2d 863, 865, 636 P.2d 793 (1981). The debtors cite the definition of "earnings" as "compensation paid or payable for personal services" and argue that the purpose of Kansas' exemption laws would be defeated

if debtors are denied the use of their earnings simply by placing them in a checking account.

## Discussion

■ In ascertaining the plain meaning of a statute, the court seeks its meaning from the language of the statute and if it is straightforward, enforces it according to its terms. *Gardner by and through Gardner v. Chrysler Corp.*, 89 F.3d 729, 736 (10th Cir.1996). K.S.A. Chapter 60, Article 23, speaks to various exemptions from involuntary divestiture of property, or a right to property, including the homestead exemption (§§ 2301–03), personal property (§§ 2304, 2306 and 2307), pension and retirement money (§ 2308) and numerous miscellaneous exemptions (§ 2313) in addition to wages (§§ 2309 and 2310). The word exemption is not defined in Article 23 but generally it implies release from some obligation or legal requirement. Black's Law Dictionary 571 (6th ed.1990). In the context of § 2310, an employer is exempt from the requirement to pay earnings to an employee when a wage garnishment is properly filed, subject to the restrictions set forth in the statute.

In concluding that the protections afforded by § 2310(b) continue to apply to wages deposited in a debtor's bank account, Judge Robinson relied heavily on her decision in *In re Moore*, 214 B.R. 628 (Bankr.D.Kan.1997). In *Moore*, the debtor deposited social security benefits into her bank account. The trustee did not dispute that the debtor's social security benefits were exempt under various federal and state laws. The trustee argued, however, that such funds did not retain their exempt status once the debtor withdrew the funds or cashed the funds and placed them in her checking account. Judge Robinson rejected this argument.

She cited 42 U.S.C. § 407 which provides, in pertinent part:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Judge Robinson found that the words "moneys paid" in § 407 show that the exemption applies to social security benefits already paid out and that the funds do not lose their exempt status when deposited into a bank account. In reaching the latter conclusion, Judge Robinson relied on *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) which held that veteran's benefits retained their exempt status after being deposited in a savings and loan association account.

The court notes that § 407(a) is broader than § 2310(b) because § 407(a) includes not only garnishment, but extends "to the operation of any bankruptcy or insolvency law." Kansas is an "opt out" state and has the authority under 11 U.S.C. § 522(b) to create whatever property exemptions in bankruptcy it chooses. There are only two express references to bankruptcy in Chapter 60, Article 23. The first is K.S.A. 60–2310(e) which provides, in pertinent part:

Exceptions to restrictions on wage garnishment. The restrictions on the amount of disposable earnings subject to wage garnishment as provided in subsection (b) shall not apply in the following instances:

\* \* \* \* \* \*

(2) any order of any court of bankruptcy under chapter XIII of the federal bankruptcy act;

The second is K.S.A. 60–2312, which covers a debtor's right to elect exemptions under federal law. Kansas law does not provide for a bankruptcy exemption anything like that contained in 42 U.S.C. § 407(a). While Judge Robinson's exemption analysis may be correct in the federal statutory context of social security funds, it does not extend by analogy to wages which are partially exempt from garnishment under Kansas law.

Similarly, Judge Robinson's application of *Porter* is problematic. The statute at issue in *Porter*, 38 U.S.C. § 310(a), provided, in pertinent part, that payments of VA benefits due or to become due "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, *either before or after receipt by the beneficiary.*" (Emphasis added.) *Porter* did not discuss § 301(a) in the context of bankruptcy and there is no Kansas statute which uses anything similar to the "after receipt" language cited, *supra. See and compare In re Robinson,* 241 B.R. 447, 449 (9th Cir. BAP 1999). It is true that the Supreme Court stated that legislation designed to protect funds granted by Congress for the maintenance and support of beneficiaries should be construed liberally, *see Porter,* 370 U.S. at 162, 82 S.Ct. 1231, and that Kansas recognizes the same concept. *Coward v. Smith,* 6 Kan.App.2d 863, 865, 636 P.2d 793 (1981). Nevertheless, there is no language in the Kansas statutory exemption scheme which extends garnishment protection beyond wages "paid or payable" by the employer. The rule of liberal construction does not permit judicial creation of provisions which are not contained in the statute.

The trustee cites *In re Lawrence,* 219 B.R. 786 (E.D.Tenn.1998), a case not discussed by Judge Robinson. One of the issues in *Lawrence* concerned the application of Tenn.Code Ann. § 26–2–106 which is identical to K.S.A. 60–2310(b) for all intents and purposes. In an exhaustive opinion, the court examined many of the issues raised by the parties in this case. The court found, in pertinent part:

> This Court also agrees with the bankruptcy court's conclusion that when earnings are paid and distributed to a debtor in Tennessee, the earnings do not retain their exempt status in the debtor's hands and bank accounts under Tenn.Code Ann. § 26–2–106. Once earnings come into the debtor's possession, creditors have the right under Tennessee law to attach and execute on the earnings to collect debts except to the extent that another statutory exemption may apply.

*Id.* at 793.

The court went on to note that another Tennessee statute, § 26–2–102, allows an exemption for personal property in the debtor's possession including his bank accounts and that:

> When §§ 26–2–102 and 26–2–106 are construed together, the Court concludes that once disposable earnings are received and possessed by a debtor and the earnings are no longer governed by the exemption from garnishment in § 26–2–106, then the earnings possessed by the debtor become subject to the exemption in § 26–2–102.

*Id.* at 794. Unlike Tennessee, Kansas has no exemption for a debtor's bank account. K.S.A. 60–2304, which deals with personal property, does not mention bank accounts.

Finally, the Tennessee court made the following observation:

> [I]f the Tennessee Legislature had intended for Tenn.Code Ann. § 26–2–106 to make earnings paid to a debtor completely and permanently exempt from the reach of his creditors for bankruptcy

purposes, it would have so provided. The Tennessee Legislature knows how to exempt money in the hands of creditors when it chooses to do so. For example, Tenn.Code Ann. § 26–2–104(a) provides that "[a]ll monies received by a resident of the state, as pension from the state of Tennessee, or any subdivision or municipality thereof, before receipt, or *while in the resident's hands or upon deposit in the bank,* shall be exempt from execution, attachment or garnishment other than" an assignment for child support pursuant to Tenn.Code Ann. § 36–5–501. (Emphasis supplied).... The Tennessee Legislature could have inserted language in § 26–2–106 similar to § 26–2–104(a) extending the garnishment exemption to disposable earnings in the hands and bank accounts of debtors but it has not done so.

*Id.* The same reasoning applies to the Kansas legislature.

In summary, the court respectfully disagrees with Judge Robinson's analysis and conclusion that the protections afforded by § 2310(b) continue to apply to wages deposited in a debtor's bank account. Instead, the court is persuaded by Judge Pearson's conclusion in *In re Doughman* that the restrictions in § 2310(b) apply only to wages before they are paid to the debtor. Therefore, none of the $1261.22 on deposit in the debtors' checking account is exempt.

Accordingly, Judge Robinson's decision is reversed. Because Judge Robinson did not have an opportunity to rule on the parties' second issue, whether the trustee should be permitted to recover wages where distribution to creditors will or might be de minimis, the case will be remanded to Judge Robinson for her consideration of this issue.

The clerk is directed to enter judgment in accordance with the rulings herein.

IT IS SO ORDERED.

## EXHIBIT A

United States Bankruptcy Court,

D. Kansas.

### *MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on the Trustee's Objection to Exemption and Motion to Compel Turnover. Upon the filing of stipulations and briefs by the parties, the Court took the matter under advisement.

### *JURISDICTION*

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

### *FINDINGS OF FACT*

The parties stipulated to the following facts. Scott Wayne Adcock and Cherish Marie Adcock (Debtors) filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 17, 1998. As of the date the Debtors' bankruptcy was commenced, the Debtors had $1,261.22 on deposit in their general checking account.[1] The entire $1,261.22 were wages deposited electronically.

On August 10, 1998, the Debtors filed an amendment to Schedule C to include wages as exempt property pursuant to K.S.A. 60–2310. On August 17, 1998, the Trustee filed an objection to the claimed wage exemption.

---

1. Debtors have noted that the $1,261.22 in wages were the only funds on deposit in their bank account. The Trustee has not disputed this fact. Thus, there are no issues regarding co-mingling in this case.

## CONCLUSIONS OF LAW

The issue before the Court is whether the wages on deposit in the Debtors' general checking account qualify as exempt property pursuant to K.S.A. 60–2310. The Debtors also claim that even if no exemption applies, that any recovery by the creditors will be *de minimus,* and as a result, recovery should not be permitted. The Trustee has the burden of proving that the exemptions are not properly claimed.[2]

The filing of a bankruptcy petition creates an estate that includes "all legal and equitable interests of the debtor in property as of the commencement of the case." [3] The funds on deposit in the Debtors' bank account as of the date of the filing are property of the Debtors' bankruptcy estate.

Section 522(b) of the Bankruptcy Code gives debtors the option of electing the federal exemptions pursuant to subsection (b)(1), or the exemptions as set forth in subsection (b)(2). Kansas has opted out of the federal exemption scheme, thereby preventing its residents from claiming the federal exemptions and forcing them to elect the exemptions set forth in § 522(b). The exemptions under § 522(b) include:

any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place.[4]

In addition, Kansas law allows a debtor to exempt property listed in § 522(d)(10).[5]

The Debtors have relied on K.S.A. 60–2310 in claiming their exemption. K.S.A. 60–2310 provides in pertinent part as follows:

(b) *Restriction on wage garnishment.* Subject to the provisions of subsection (e), only the aggregate disposable earnings of an individual may be subjected to wage garnishment. The maximum part of such earnings of any wage earning individual which may be subjected to wage garnishment for any workweek or multiple thereof may not exceed the lessor of: (1) Twenty-five percent of the individual's aggregate disposable earnings for that workweek or multiple thereof; (2) the amount by which the individual's aggregate disposable earnings for that workweek or multiple thereof exceed an amount equal to 30 times the federal minimum hourly wage, or equivalent multiple thereof for such longer period; or (3) the amount of the plaintiff's claim as found in the order for garnishment.

K.S.A. 60–2310(a)(1) defines earnings as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise." K.S.A. 60–2310(a)(3) defines wage garnishment as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

The Court finds that K.S.A. 60–2310 provides an exemption for 75% of a debtor's wages.[6] The Trustee argues that the

2. Fed. R. Bankr.P. 4003(c).

3. 11 U.S.C. § 541(a)(1).

4. 11 U.S.C. § 522(b)(2)(A).

5. *See* K.S.A. 60–2312.

6. *See In re Price,* 195 B.R. 775 (Bankr.D.Kan. 1996) (holding that debtor was entitled to claim 75% of her interest in real estate commissions as exempt pursuant to K.S.A. 60–2310, where debtor was employee rather than independent contractor for purposes of the statute).

statute applies to garnishments only and does not provide an exemption for debtors in bankruptcy. Although the statute deals with garnishments, it is located in the exemption statutes and the Court finds that it does provide an exemption.[7] Chapter 60 of the Kansas Statutes Annotated is titled "Civil Procedure," and Article 23 (60–2301 to 60–2314) of that Chapter is titled "Exemptions."

The Trustee argues that K.S.A. 60–2310 does not protect the wages once they have left the control of the employer. This Court, in In re Moore,[8] held that social security benefits that have already been paid out are exempt where the pertinent statute states that none of the "moneys paid" shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. In ruling, the Court made the following statements which are pertinent in the present case:

> The emphasized language of the statute shows that the exemption applies to social security benefits that have already been paid out. Furthermore, the Court finds that the funds do not lose their exempt status when deposited into a bank account. In Porter v. Aetna Casualty & Sur. Co., the Supreme Court decided whether benefits paid by the United States Veterans' Administration retain their exempt status under 38 U.S.C. § 3101(a) after being deposited into a federal savings and loan associa-

tion account. Porter v. Aetna Casualty & Sur. Co., 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962). The Supreme Court held that because legislation of this type should be liberally construed to protect funds granted by Congress for the maintenance and support of the beneficiaries thereof, such deposits should remain inviolate. Id. at 162, 82 S.Ct. 1231. The Supreme Court stated that:

> The Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

Id. In Philpott v. Essex County Welfare Bd., 409 U.S. 413, 416, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), the Supreme Court held that in light of the protection afforded by 42 U.S.C. § 407, the reasoning in Porter is relevant to social security benefits deposited into a bank account. The Supreme Court held that the funds on deposit were readily withdrawable and retained the quality of "moneys" within the purview of § 407. The Kansas Supreme Court has also relied on the reasoning in Porter and Philpott. See E.W. v. Hall, 260 Kan. 99, 105, 917 P.2d 854, 858 (1996) (citing

---

7. See Southwest State Bank v. Quinn, 198 Kan. 359, 363, 424 P.2d 620 (1967) (stating that exemptions to Kansas residents are prescribed in our constitution in which a homestead is assured to a family and generally in our statutes at K.S.A. 60–2301, et seq., and items exempt include wages); cf. In re Sinker, 113 B.R. 34 (D.Kan.1990) (holding that K.S.A. 60–2414(k) was not an exemption statute); In re Garrity, 144 B.R. 895 (Bankr. D.Kan.1992) (holding that K.S.A. 60–742(2)

was not an exemption statute); In re Rodriguez, 140 B.R. 562, 564 (Bankr.D.Kan.1992) (holding that because under K.S.A. 60–717(c) the amount of funds garnished may not invade that portion of the wages which are exempt, wages that are properly garnished can never be exempt).

8. 214 B.R. 628, 630 (Bankr.D.Kan.1997).

*Porter* and holding that social security benefits which were placed into a certificate of deposit retained their exempt status because certificates of deposit are "normal modes adopted by the community" for the safekeeping of funds); *Younger v. Mitchell,* 245 Kan. 204, 777 P.2d 789 (1989) (citing *Porter* and holding that Veterans' Administration disability benefits retained exempt status after being deposited into a savings account, where funds were readily available as needed for support and maintenance of judgment debtor and his wife). *See also In re Norris,* 203 B.R. 463, 467 (Bankr.D.Nev.1996) (citing cases from other jurisdictions which recognize that statutorily exempt funds do not lose their exempt status when deposited into a personal checking account).

Based on the rationale set forth in *Moore,* the Court finds that 75% of the Debtors' wages are exempt and do not lose their exempt status by virtue of being deposited in Debtors' bank account. The exemption laws are to be liberally construed "so as to effect the humane purpose of the legislature in enacting them." [9] The court in *In re Norris,*[10] noted that in order to permit a wage earner to enjoy the benefits of the exemption statute, "it is necessary to accord the wage earner a reasonable opportunity to negotiate the 'disposable earnings' and spend the funds, otherwise the exemption would be rendered meaningless."

**IT IS THEREFORE ORDERED BY THE COURT** that the Trustee's Objection to Exemption and Motion to Compel Turnover shall be DENIED with respect to 75% of the Debtors' wages on deposit in Debtors' bank account. The remaining 25% shall be subject to turnover.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

### EXHIBIT B

In re Bradley Allen Doughman and Johni Sue Doughman, Debtors.

No. 98–12289.

### MEMORANDUM OF DECISION

This matter is before the Court on the trustee's Motion for Turnover and the debtor's objections thereto. The Trustee, J. Michael Morris, appears pro se. The debtors appear through Stephen Speth of Speth, King and Riedmiller, Wichita, Kansas. The parties have submitted the matter on stipulations and briefs.[1]

### NATURE OF CASE

On May 28, 1998, the debtors filed a petition for relief under Chapter 7. On August 19, 1998, the trustee filed a motion for turnover of the $1,108.01 balance in the debtors' bank account on the date of filing. The funds are prepetition earnings that were deposited into the account prior to the date of filing. On September 1, 1998, the debtors filed an objection to the motion, stating that the funds are exempt wages. Checks written by the Debtors

---

**9.** *In re Meckfessel,* 67 B.R. 277, 278 (Bankr. D.Kan.1986) (citations omitted).

**10.** 203 B.R. 463, 466 (Bankr.D.Nev.1996).

**1.** The United States Trustee filed a comment on the trustee's motion for turnover. (*See* Doc. 38.)

prepetition cleared the account post petition and depleted the balance. For the reasons stated below, the Court grants the Trustee's Motion for Turnover and overrules the Debtors' Objection to the Motion.

### FACTS

The parties have stipulated to the relevant facts:[2]

1. The above bankruptcy case was filed on May 28, 1998.

2. At the end of the business day on May 28, 1998, the debtors had $1,108.01 in their checking account at The Bennington State Bank. Included in such amount was $359.40 from the debtor Bradley Doughman's wages, which had been deposited into the account on May 22, 1998, and $816.94 from the debtor Johni Doughman's wages, which had also been deposited into the account on May 22, 1998.

3. The day after the filing of the bankruptcy, May 29, 1998, the sum of $242.35 from Bradley Doughman's wages was deposited into the account. The wages were earned in full prior to the filing of the bankruptcy on May 28, 1998.[3]

### CONCLUSION OF LAW

1. The bank balance on the date of filing is an asset of the estate.

2. The debtors are not entitled to exempt part or all of the balance.

---

2. The debtors have attached to their brief a document apparently obtained from the United States Trustee, showing distributions from various chapter 7 estates in 1998. The exhibit is not part of the stipulated record and has no direct relevance to the facts in this case and will not be considered here.

3. The stipulations of fact included a copy of the debtors' bank account statements from The Bennington State Bank for the period May 5, 1998, through June 2, 1998. A review

3. The Court cannot create an 'administrative exemption' as argued by the Debtors.

### DISCUSSION

The issue here goes beyond the relatively minor amount at issue in this particular case. Most debtors maintain checking accounts prepetition and few make the effort to "zero balance" those accounts as of the date of bankruptcy. Thus, in most consumer cases, the debtors end up with a balance in their checking account at the close of the banking day on which their petition is filed. Unfortunately, most debtors also have outstanding checks which have not cleared as of the date of the petition. There can be no argument that under both the Bankruptcy Code and Kansas law the bank balances are an asset of the estate. 11 U.S.C. § 541. In the absence of controlling federal law, "property" and "interests in property" are questions of state law. *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *In re Ben Kennedy and Associates, Inc.*, 40 F.3d 318 (10th Cir.1994). In general, wages earned prepetition are property of the estate. *In re Calder*, 912 F.2d 454 (10th Cir.1990). It is also well established that checks do not effect a transfer of funds until they are honored by the bank. *Barnhill*, 503 U.S. at 394, 112 S.Ct. 1386. Thus, the bank balance on the date of filing is an asset of the estate.[4]

---

of the bank records indicates that no money from any source other than wages was deposited immediately before the petition for relief.

4. The Court does not reach the issue of when, on the date of filing, the balance is determined on the facts of this case. Obviously, better practice would be to assure that all outstanding checks are cleared *before* the petition is filed.

The Trustee is clearly entitled to the funds unless the Debtors can demonstrate that they are entitled to claim some part or all of them as exempt under Kansas law. Debtor relies on K.S.A. § 60–2310(b) which exempts from *wage garnishment* an individual's "aggregate disposable earnings." "Wage garnishment" is a defined term under the statute: " ... any legal or equitable procedure through which the earnings of any individual are *required to be withheld for payment of any debt;"* K.S.A § 60–2310(a)(3) (emphasis supplied). The essence of a wage garnishment proceeding is that the debtor's employer is required to withhold some part of the debtor's earnings for payment of a debt. The Court need only look to the statute to conclude that, irrespective of whether the proceeds lose their character as "earnings" upon deposit into a bank account, the restrictions in K.S.A. § 60–2310 apply only to wages before they are paid to the debtor. To read the statute otherwise would read out of it the portion of the definition of "wage garnishment" referring to *withholding* earnings for payment of a debt. Moreover, as the Trustee notes, other Kansas statutes dealing specifically with exemption from legal process for debt collection are considerably broader in their wording, which suggests that a much narrower construction is necessary here.

In the case of *In re Sinker,* 113 B.R. 34 (D.Kan.1990), where the trustee sold the redemption rights of the debtors' nonexempt property, the District Court rejected the appellants contention that K.S.A. § 60–2414(k) created an exception for redemption rights. The Court found that the creation of an exception by K.S.A. § 60–2414(k) "to the general rule that all property of a judgment debtor is subject to attachment, execution and levy to satisfy the judgment is not important in the context of bankruptcy." *Sinker,* 113 B.R. at 35. The Court went on to say that "the provisions of K.S.A. § 60–2414(k) do not constitute an exemption within the meaning of 11 U.S.C. § 522(b)(2)." *Id.* This reasoning was followed in *In re Garrity,* 144 B.R. 895 (Bankr.D.Kan.1992), where the court found that K.S.A. § 60–724(2) does not constitute an exemption within the meaning of 11 U.S.C. § 522(b)(2). "While the debtor's unliquidated medical malpractice claim is not subject to garnishment pursuant to K.S.A. § 60–724(2), the claim is property of the estate and cannot be claimed as exempt" *Id.* at 896.[5]

Further, as the Trustee points out, the Supreme Court, in construing similar language in the Consumer Credit Protection Act, concluded that it did not create an exemption in bankruptcy. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). There the Court noted: " 'Just because some property interest had its source in wages ... does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages.' " *Kokoszka,* 417 U.S. at 648, 94 S.Ct. 2431 (quoting *In re Kokoszka,* 479 F.2d 990, 995 (2d Cir.1973)). Here, the court is compelled to conclude that the state statute does not create an exemption for wages.

The Debtors argue that the Court should create or recognize an administrative exemption of $1,500.00 on the theory that the trustees should not have to administer a case with assets of less than $1,500.00. This Court does not have the

---

5. The Court is aware of *In re Adcock,* in which Judge Robinson found that K.S.A. § 60–2310 (restriction on wage garnishment) provides an exemption for 75% of a debtor's wages. It disagrees.

authority to, in effect, legislate an exemption. The trustees make the decision about administration of estate assets and presumably, have discretion to decline to administer small estates. The Court is required to approve administrative fees and has discretion to deny fees. Certainly, the trustees should not be encouraged to administer an estate where from the outset it appears that there will be little or no distribution to creditors. Indeed, one of the enduring criticisms of the bankruptcy system in this country has been the appearance that it has been run solely for the benefit of the insiders.

The Seventh Circuit has noted:

It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset. His duty is to endeavor to maximize the value of the estate, which is to say the net assets. The performance of this duty will sometimes require him to forbear attempting to collect a particular asset, because the costs of collection would exceed the asset's value. Put differently but equivalently, the care, diligence, and skill that a lawyer for the debtor's estate, like the trustee himself, is required to bestow as part of his fiduciary duty is not merely care, diligence, and skill in the prosecution of the estate's claims. It is also care, diligence, and skill in deciding which claims to prosecute, and how far. This duty placed Aimen under an obligation to his client, the debtor's estate, to abandon the preference suit once it became reasonably obvious that further litigation

would cost more than it was likely to bring into the estate.

*In the Matter of Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir.1995) (citations omitted).

Thus, the creation an iron-bound minimum amount to administer should be reserved for Congress. Accordingly, the Court declines the Debtors' invitation to legislate.

## Conclusion

The Debtors' balance in their checking account, on the day of the bankruptcy filing, is an asset of the bankruptcy estate under 11 U.S.C. § 541. As the Court concludes that there is no basis for the Debtors' claim of exemption of the prepetition wages, it concludes that the Trustee is entitled to an order directing the Debtors to turnover to the Trustee the amount of $1,108.01.

THEREFORE, IT IS ORDERED that the Trustee's Motion for Turnover is granted, and the debtors' are ordered to turnover to the Trustee the amount of $1,108.01.

IT IS SO ORDERED.

Signed: July 16, 1999.

John K. Pearson

United States Bankruptcy Judge.

## JUDGMENT ON DECISION

This matter is before the Court on the trustee's Motion for Turnover and the debtor's objections thereto. The trustee, J. Michael Morris, appears pro se. The debtors appear through Stephen Speth of Speth, King and Riedmiller, Wichita, Kansas. The parties have submitted the matter on stipulations and briefs.[1]

---

1. The United States Trustee filed a comment on the trustee's motion for turnover. (*See* Doc. 38.)

For reasons stated in the decision, IT IS ORDERED that the trustee's Motion for Turnover is granted, and the debtors' are to turnover to the trustee the amount of $1,108.01, the balance in the debtors' checking account as of the date of their bankruptcy filing.

IT IS SO ORDERED.